Standard Contract for The Galileo® Advanced Management Mentoring 5-Year Program ™

**1]** That he go through the Galileo® Advanced Management Mentoring curriculum under the direct supervision of the Galileo® Advanced Management Mentoring Training Division.

**2]** That he has been informed by Galileo® Systems International that GSI refuses to either offer the Advanced Management Mentoring Program to or enroll prospective students in the Advanced Management Mentoring Program should they indicate or suggest in discussions prior to admission that they do not plan to go through the Galileo® Advanced Management Mentoring curriculum under the direct supervision of the Galileo® Advanced Management Mentoring Training Division.

3] That his enrollment in the Galileo® Advanced Management Mentoring Program is indeed dependent upon his making the exact commitment that he will go through the Galileo® Advanced Management Mentoring curriculum under the direct supervision of the Galileo® Advanced Management Mentoring Training Division. This commitment is asserted by the fact of Dr. Schwartz's acceptance of this offer.

4] That he agrees that if any scheduling difficulties should occur, Dr. Schwartz will follow the precise procedures described in the Galileo® Advanced Management Mentoring materials for reaching the Galileo® Systems International CEO, Chief Systems Architect and Director of Admissions, Peter Letterese directly, as soon as practical to resolve the problem, should all other means fail.

Copyright © 2003. Galileo® Systems International. All Rights Reserved.

Standard Contract for The Galileo® Advanced Management Mentoring 5-Year Program ™

# 5.  Payment of the fee shall only be accepted by GSI based upon the mutual understandings that:

1] This contract is the only offer being made by GSI, except as may be noted and mutually initialed by both parties.

2] GSI expects its clients to pay in a timely manner, by bankwire depositable in GSI's bank in Florida or elsewhere designated, on time and exactly as per this Contract.

3] This contract shall be binding upon the parties upon execution.

4] The client is obligated to pay in full immediately upon execution and it shall be a condition precedent to the delivery of all trademarked and copyrighted goods, etc. by GSI to the client.

5] Failure of any party to comply as stated herein will be deemed a material breach of this contract by that party.

# 6.  Governing Law: -This contract shall be governed by Florida law and shall be construed in accordance with Florida law.

Copyright © 2003. Galileo® Systems International.  All Rights Reserved.

Standard Contract for The Galileo® Advanced Management Mentoring 5-Year Program ™

# 7. Self-Determined Choice To Purchase:

Any new party replacing a party to this agreement, for whatever reason, shall both benefit and be bound by this agreement as though they were the original signatory. All words in the present tense includes the future; the masculine includes the feminine and neuter; the singular number includes the plural and the plural number includes the singular; and the word "person" includes a corporation as well as a natural person.

Dr. Schwartz asserts and warrants by affixing his signature below that:

1] He is entering into this agreement ...

2] with questions asked and answered complete to his satisfaction, regarding the issues involved in enrollment in and acceptance by GSI for the Galileo® Advanced Management Mentoring Program™.

3] And also that he asserts and warrants by affixing his signature below that he is under no duress nor pressure to enroll whatsoever.

4] He further warrants that he fully understands that the benefits of the program are offered in the context of the precise terms of the contract.

Copyright © 2003. Galileo® Systems International. All Rights Reserved.

Standard Contract for The Galileo® Advanced Management Mentoring 5-Year Program ™

5] **He is agreeing, by affixing his signature below, to the remedies prescribed within this contract as the sole remedies for the resolution of any and all future disagreements that may arise between the parties.**

6] In view of the fact that the entirety of the negotiations leading to this contract have been conducted by telephone,

   * He acknowledges that he has satisfied himself, as a result of his own questions asked re the Galileo® Advanced Management Mentoring Program™ ... and

   * as to the desirability of the Galileo® Advanced Management Mentoring Program™ for his use.

   In short, Dr. Schwartz makes this agreement on his own self-determination, anticipating the benefits obtainable from the Galileo® Advanced Management Mentoring Program™.

# 8.  In Case of a Dispute - Alternative Dispute Provisions:

   a. SERVICE OF PROCESS.  The parties agree that service of process for any dispute arising under this agreement can be made by any authorized process server in the state where the process is served.  Each party waives any objection to jurisdiction over the person being

Copyright © 2003. Galileo® Systems International.  All Rights Reserved.

asserted in a court in Broward County, Florida.

b. ARBITRATION.  If a dispute arises under this contract either party herein agrees, as its single source of dispute resolution, <u>to have the dispute arbitrated</u> under the rules of the American Arbitration Association, except as otherwise provided in this paragraph. Arbitrators will be chosen by mutual agreement between the parties from a mutually agreeable source. Venue for the arbitration shall be in Broward County, Florida but arbitration can be attended by Dr. Schwartz BY PHONE if a dispute resolution becomes necessary, making a physical trip to Florida unnecessary but available if Dr. Schwartz were to feel his best interests served by such.

Dr. Schwartz acknowledges by his signature below that he recognizes and accepts the purposes for GSI selecting arbitration as the sole and binding dispute resolution option to be:

1) to reduce costs to the client if a dispute cannot be resolved directly with the Galileo® Advanced Management Mentoring Program$^{TM}$;

2) to eliminate the absolute need for the client to retain an attorney to be substantially represented in any dispute resolution process yet making the retaining of one where desired, far less expensive to the client and to the Galileo® Advanced Management Mentoring Program;

Copyright © 2003. Galileo® Systems International. All Rights Reserved.

3) to speed up justice;

4) to make the contract as a whole perform more smoothly by virtue of taking into account a fair and orderly handling for any poor performance or worst case scenario.  The Commercial Arbitration Rules in force at the time arbitration is requested shall govern the proceeding, except as follows:

     i. The arbitrator shall not have the power to change the venue as prescribed in this agreement.

     ii. Each of the parties shall designate an arbitrator who shall be actively practicing his business or profession and shall have a minimum of ten years experience in the business or profession.  The two arbitrators thus selected shall select a third arbitrator who shall have the same qualifications.  The three arbitrators thus selected shall constitute the panel of arbitrators.  A decision in the arbitration shall be by a majority vote of the arbitrators.

     iii. The arbitrators shall follow Florida law in determining the arbitration.

     iv. In the award the arbitrators shall specify the facts as found by them; the grounds for their decision; and their conclusions on the law applicable to the decision.

     v. Except as otherwise provided in this

Copyright © 2003. Galileo® Systems International.  All Rights Reserved.

Standard Contract for The Galileo® Advanced Management Mentoring 5-Year Program ™

paragraph, Chapter 682 Florida Statutes shall apply to the arbitration.

    vi.  Evidence by affidavit shall not be accepted. Chapter 90 Florida Statutes shall apply to the admission and rejection of evidence.

    **If a party attempts to contest, modify or circumvent this paragraph, the other party shall be entitled to attorney fees and all expenses reasonably incurred in enforcing this paragraph. The parties agree that any and all disputes of any kind by and between these parties shall be resolved exclusively by arbitration.  This shall include any contract disputes, tort disputes, or claims of any kind.**

    c. JURY WAIVER.  THE PARTIES TO THIS AGREEMENT WAIVE ANY RIGHT TO A JURY TRIAL THAT EITHER OF THEM MAY HAVE IN ANY ACTION OR PROCEEDING ARISING FROM OR CONNECTED WITH THIS AGREEMENT. This Agreement contains the entire understanding between the parties.

Copyright © 2003. Galileo® Systems International.  All Rights Reserved.

Standard Contract for The Galileo® Advanced Management Mentoring 5-Year Program ™

# Special Terms:
## Partial List of Dr. Schwartz's Chief Concerns:

Dr. Schwartz has indicated that the following areas of some of the ones that matter most to him with respect to the deliverables he wants from this Agreement.  The three key areas of Galileo® Advanced Management-Mentoring Group activity ...

**1. Creating & Maintaining a Maximally Insurance-Independent Dental Practice**
**2. Strategic Performance- Improvement Training™**
**3. Perfect Application of The Technology of Selling®)**

... which cover in fact 23 areas of organizational importance are, per Dr. Schwartz's indicated areas of interest and attention, to be directed on a tailored basis to address and correct (as necessary) the following factors present in his Dental career and practice:

1. SEAMLESS COORDINATION WITH ANOTHER PRACTICE SYSTEM HE IS DEPLOYING, WITHOUT COMPETITION OR CONFLICT CAUSED BY **GSI**
2. REDUCTION OF ALL DEBT (PRACTICE $700,000; PERSONAL $650,000) TO $ZERO IN 3 YEARS FROM THE DATE OF SIGNING OF THIS CONTRACT
3. THE ABILITY, HERETOFORE INADEQUATE TO HIS SATISFACTION, TO REMOVE HIMSELF, IS OFFICE, HIS STAFF AND HIS PATIENTS  FROM THE INFLUENCE OF INSURANCE COMPANIES ... **ACCOMPLISHED 100%**
4. THE LOCATION, TRAINING AND GROOMING OF AN OFFICE MANAGER
5. CORRECTED, MAXIMIZED AND MAINTAINED-EFFECTIVE DEPLOYMENT AND COMPENSATION FOR PRODUCTION OF DR. SCHWARTZ'S STAFF
6. REVITALIZED ENTHUSIASM FOR THE PROFESSION OF DENTISTRY, EXACTLY ACCORDING TO DR. SCHWARTZ'S CLINICAL AND PROFESSIONAL BEST JUDGMENT AND PREFERENCE AS TO HOW THE PRACTICE SHOULD BE CONFIGURED AND CONDUCTED, IN FACT.
7. FULL SUPPORT BY **GSI** STAFF ON A DAILY BASIS
8. GROSS INCOME RAISED TO $1.4 MILLION PER YEAR IN LESS WEEKLY WORK

Copyright © 2003. Galileo® Systems International. All Rights Reserved.

Standard Contract for The Galileo® Advanced Management Mentoring 5-Year Program ™

TIME THAN DR. SCHWARTZ CURRENTLY PUTS IN TO ATTAIN HIS CURRENT AVERAGE OF $85,000+ PER MONTH

9. **REDUCTION OF PRACTICE ACCOUNTS RECEIVABLES TO $ZERO PERMANENTLY**

# Special Terms:
## Money-Back Guarantee:

A money-back guarantee is available to Dr. Schwartz, if Dr. Schwartz purchases the Galileo® Advanced Management Mentoring Program™ on an immediate basis. Standard Program includes 2-4 Days In-Office Initial Training scheduled upon enrollment and additional In-Office visits whenever needed, as scheduled by of the Galileo® Advanced Management Mentoring Program™.

Should Dr. Schwartz be dissatisfied with the Galileo® Advanced Management Mentoring Program™, **HE MAY RECEIVE A FULL REFUND IN CASH** of the Galileo® Advanced Management Mentoring Program™ fee amount paid as follows:

IF HE DOES NOT FEEL HE HAS GAINED SUFFICIENT BENEFIT FROM THE PROGRAM **AT THE END OF TWO YEARS** DURING WHICH HE HAS COMPLIED WITH THE TERMS OF THIS CONTRACT AS STATED HEREIN, HE MAY REQUEST AND WILL RECEIVE A FULL REFUND.

AS USED IN THE PARAGRAPH ABOVE, "COMPLIED WITH THE TERMS OF THIS CONTRACT" SPECIFICALLY MEANS THAT A GOOD FAITH, CONSISTENT EFFORT IS MADE BY THE DOCTOR ... A) TO COMMUNICATE AND COOPERATE(AS NOTED ABOVE) WITH THE GALILEO® ADVANCED MANAGEMENT MENTORING PROGRAM™ WITH THE INTENT TO ... B) LEARN AND APPLY THE MATERIAL OF THE PROGRAM, **FOR A PERIOD OF TWO YEARS.**

Copyright © 2003. Galileo® Systems International. All Rights Reserved.

Standard Contract for The Galileo® Advanced Management Mentoring 5-Year Program [TM]

BY AFFIXING SIGNATURES BELOW, BOTH PARTIES ACKNOWLEDGE
THAT THE ABOVE PARAGRAPH IS ONE OF THE CONCEPTUAL BASES
FOR THE AGREEMENT.

# Fees and Terms:

Payment Schedule: $150,000(US), in advance,
conditional on Dr. Schwartz purchasing The Galileo®
Management Mentoring Program[TM] on an immediate basis,
less the full purchase price of a separate program
($27,500) plus 10% interest for one year ($2750), MAKING
A DISCOUNTED TOTAL FEE OF $119,750.

GSI agrees to help Dr. Schwartz as needed to find a
source of funds. Dr. Schwartz acknowledges that as a
result of his signature below, he is authorizing GSI, if his
own financial resources make it impossible for him to use
such to fund this program in full immediately, to invest its
time and to make available to Dr. Schwartz its goodwill
business relationship with a qualified lender and that he
fully agrees to consummate the loan obtained, once
approved.

Dr. Schwartz acknowledges that but for his agreement to
the points in this agreement concerning time and effort on
GSI's part in the pursuit of financial assistance for Dr.
Schwartz expressly for his use in funding The Galileo®
Advanced Management Mentoring Program[TM], Galileo®
Systems International would not spend its executive time nor

Copyright © 2003. Galileo® Systems International. All Rights Reserved.

Standard Contract for The Galileo® Advanced Management Mentoring 5-Year Program ™

invest its goodwill relationship with one or more finance sources into merely inquiring as to credit availability for Dr. Schwartz; nor would it spend any time acquiring credit availability for him, independent of or absent his intent and commitment to immediately enroll in The Galileo® Advanced Management Mentoring Group™. By his signing of this agreement, Dr. Schwartz agrees to be explicitly bound to this section of the Agreement, because he understands that GSI relies upon its opportunity to perform as agreed. Dr. Schwartz agrees and acknowledges that GSI incurs major costs at the risk of a fee contingent upon its successful performance in the acquisition of financing for Dr. Schwartz.

Further, Galileo® Systems International necessarily limits its commitments and time that could be directed to other potential clients while the financing for Dr. Schwartz is secured and received by Galileo® Systems International, once begun. Once this agreement is signed by Dr. Schwartz, GSI potentially loses revenue that it would otherwise be able to earn while committed to using its resources to obtain (or assist with the acquisition of) this financing for Dr. Schwartz.

Because of GSI's investment and potential revenue loss from other clients while devoting time and resources to the acquisition of Dr. Schwartz's fee via a financing source(s), Dr. Schwartz acknowledges and agrees to expeditiously (immediately) acquire and legally sign for (as may be indicated) the funds necessary to pay the full fee for Galileo®

Copyright © 2003. Galileo® Systems International. All Rights Reserved.

Standard Contract for The Galileo® Advanced Management Mentoring 5-Year Program ™

Advanced Management Mentoring Group™ participation, once identified and located by GSI's Director of Registration; and to do this without delay after Dr. Schwartz's signing of this agreement. Dr. Schwartz additionally acknowledges that Galileo® Systems International expects and Dr. Schwartz warrants that his decision to pursue and apply assisted financing for Galileo® Advanced Management Mentoring™ is firm and final.

CLIENT

DATE        12-11-03

GSI                    DATE: 9 December 2003

                       Admissions
                       Director, CEO &
                       Chief Systems Architect



AT THE POINT YOU ELECT TO ENROLL ...
PLEASE SIGN THIS CONTRACT, AND:
1. MAKE A COPY FOR YOUR RECORDS.
2. FAX BACK RIGHT AWAY THE SIGNED COPY TO GSI BY 954-434-7152 OR OTHER DESIGNATED FAX #.
3. SEND THE ORIGINAL SIGNED FAX BACK TO GSI BY FIRST CLASS MAIL.

Copyright © 2003, Galileo® Systems International. All Rights Reserved.

**Galileo® Systems International**
4019 SW 148th Ave. Davie, Florida 33330
Telephone: 800-425-4536   Fax: 954-434-1152

Dr. Marc A. Schwartz                                    December 11, 2003
1600 El Camino Real, Suite A
Belmont, CA. 94002

Addendum Services Contract
Galileo® Advanced Management Mentoring 2003-3 Year Program

1. In consideration of the immediate payment of $75,000 (US) Galileo® Systems International agree to payment for the contracted services to Dr. Marc A. Schwartz in the following manner.

In exchange, for immediate endorsement of this Addendum and the Services Contract of December 5, 2003, Galileo® Systems International agrees that the balance of the of Dr. Schwartz's specially discounted fee will not be due for 90 days. This makes the amount of $44,350 (this amount includes additional the discount of $440.00. This is a correction not shown on the original contract) due on March 11, 2004.

On behalf of Galileo® Systems International:

Barbara Fawcett, Executive V.P. for Operations                Date

Marc A. Schwartz, Belmont, California                         Date

1

# Galileo® Systems International
## 4919 SW 148th Ave. Davie, Florida 33330
## Telephone: 800-425-4536  Fax: 954-434-7152

---

Dr. Marc A. Schwartz                                    December 18, 2003
1600 El Camino Real, Suite A
Belmont, CA 94002

**Addendum Services Contract :::**
  Galileo® Advanced Management Mentoring 2003 5-Year Program

1. In consideration of the immediate payment of $39,950 (US) Galileo®
   Systems International agree to payment for the contracted services to Dr.
   Marc A. Schwartz in the following manner:

   a. In exchange for this payment and the immediate endorsement of
      this Addendum, Galileo® Systems International agrees that the balance
      of Dr. Schwartz's specially discounted fee has been further discounted
      by an additional $4,400 making the previous balance of $44,350 now to
      be a final balance of $39,950.

   b. Upon payment of this final balance of $39,950 there is no further
      payment due by Dr. Schwartz for his Galileo® Advanced Management
      Mentoring 2003 5-Year Program.

On behalf of Galileo® Systems International:

_____          _Dec 18 2003_____
Barbara Fawcett, Executive VP for Operations          Date

_____          _12-18-03_____
Marc A. Schwartz, Belmont, California          Date

1

# S.A.V.E!™ International
## A Division of Peter Letterese & Associates, Inc.



11 February 2004

Marc Schwartz
1600 El Camino Real
Suite A
Belmont, CA 94002

Assistant State Directorship, Belmont, CA
Permanent, Non-Exclusive Right to Operate Anywhere in the U.S. ...
Co-Marketing/Co-Sales of S.A.V.E! ONE™ Training

Dear Dr. Schwartz:

During the period of your training and thereafter, you will possess the right to co-market and co-sell S.A.V.E! ONE™ Training (in liaison with and under the direction of authorized representatives of S.A.V.E!™ International). Your Co-Marketing/Co-Selling will be designated participants in the territory of The City of Belmont, CA plus the Non-Exclusive Right to Operate on behalf of S.A.V.E!™ International Anywhere in the U.S. as also described in The Letter Agreement previously-sent (and any other area, by mutual agreement with S.A.V.E!™ International as indicated at the end of Your Letter Agreement relative to persons residing outside Belmont, California Area whom you connect to S.A.V.E!™ International). This co-marketed/co-sold S.A.V.E! ONE™ Training will be promoted and delivered exclusively as by S.A.V.E!™ International and designated S.A.V.E!™ Instructors until your own training or that of your designates is completed. Successful closing and delivery of such training will result in a Finder's Fee to you of 10% of the <u>gross</u> fees collected for all courses paid for in full in advance and completely <u>delivered</u> on this basis. Leads you develop that may happen to exist outside The City of Belmont, CA plus the Non-Exclusive Right to Operate on behalf of S.A.V.E!™ International Anywhere in the U.S. will be treated as though they happened within your Areas. Required registration and scheduling parameters and authorized prices for the above in detail shall be the subject of a separate document. Prior to the specification of all pertinent details, the working "equation" we will operate on is that if you <u>identify and contact</u> persons that are eventually co-closed by S.A.V.E!™ International, within three years of your identifying them to S.A.V.E!™ International, you will receive your full Finder's Fee to be paid upon completion of any fully paid-for course of training you have co-marketed and/or co-sold. On Behalf of S.A.V.E!™ International ...

Peter Letterese, CEO &
Director of Program Development

S.A.V.E!™ International
The Exclusive Source for Survive A Violent Encounter! Training™
Worldwide Headquarters - 4919 SW 148ᵗʰ Avenue Davie, FL 33330
tel: 954-434-4616 ... fax: 954-434-3479
Email: ceo@save-training.com

1

# S.A.V.EI™ International
## A Division of Peter Letterese & Associates, Inc.



11 February 2004

Marc Schwartz
1600 El Camino Real
Suite A
Belmont, CA 94002

Re: Letter Agreement for S.A.V.EI™ Full Training Program

Dear Dr. Schwartz:

This letter agreement ("Letter Agreement") is to confirm the terms under which and the conditions subject to which S.A.V.EI™ International a Division of Peter Letterese & Associates, Inc. and SAVEI International, Inc. ("PLA/S.A.V.EI") agrees to provide you with S.A.V.EI ONE™ & S.A.V.EI ONE™ Expanded Trainer's Training.

## 1.    Training; Training Fees

For a fee of One Hundred Ninety-Five Thousand (US Currency), $195,000.00 (US) discounted to One Hundred ~~Fifteen~~ *twenty-five* Thousand (US Currency), $125,000.00 (US) (exclusive of travel, food, lodging) ("Training Fee") and subject to the terms and conditions of this Letter Agreement, Galileo PLA/S.A.V.EI will provide you, and children (at the appropriate age-points) with The Official Curriculum for PLA/S.A.V.EI's S.A.V.EI ONE™ and S.A.V.EI ONE™ Expanded Trainer's Training, as listed in Exhibit "A" of this Letter Agreement°, on dates to be mutually agreed upon at various locations, including but not limited to the Knoxville, TN … and Davie, FL and other locations where S.A.V.EI ONE™ and S.A.V.EI ONE™ Expanded courses are being conducted, as part of your apprenticeship. The discounted fee of $125,000.00 (US) is discounted at the rate of 36% (for a single individual) from the otherwise full fee of $195,000(US)[1] in consideration of your endorsement of the terms and conditions of this entire Letter Agreement.

## 2.    No Training of Others by You

You understand and agree that PLA/S.A.V.EI agrees to provide S.A.V.EI ONE™ and S.A.V.EI ONE™ Expanded Trainer's Training to you under this Letter Agreement solely for your personal self-improvement, and you agree not to use any of the ideas, concepts, strategies or techniques conveyed to you in S.A.V.EI™ Training (except for S.A.V.E.™ International courses scheduled and authorized by PLA/S.A.V.EI) to train others in the same or similar techniques or for any other commercial purpose, including, without limitation, publishing any of the techniques in books or articles or giving speeches on the subject matter.

---

[1] This fee covers The Official Curriculum for PLA/S.A.V.EI's S.A.V.EI ONE™ and S.A.V.EI ONE™ Expanded Trainer's Training which consists of S.A.V.EI Training™ Level Three™ thru Level Twenty™ (titles of each level listed in Exhibit A of this Letter Agreement). S.A.V.EI ONE and S.A.V.EI ONE™ Expanded™ will have been delivered to you FREE OF CHARGE at a convenient time. S.A.V.EI™ Training Level Three™ thru S.A.V.EI Training™ Level Twenty™ are full-priced at $10,833(US) each per individual. Under this Agreement, if funded now, you are receiving them at $6,944 total per Level to include Both You and Mrs. Schwartz.

# S.A.V.E!™ International
## A Division of Peter Letterese & Associates, Inc.

### 3. Potential Acquisition of S.A.V.E! Franchise if and when offered

If and when S.A.V.E!™ International establishes a franchise system ("Franchise System") and offers franchises in accordance with applicable federal and state laws and regulations (collectively, "Regulations"), you may purchase such a franchise pursuant to a franchise agreement which would grant you a limited license to use any of the ideas, concepts, strategies or techniques conveyed to you in S.A.V.E! ONE™ and S.A.V.E! ONE™ Expanded techniques ONLY, and only for the commercial purpose and subject to the terms and conditions contained in an applicable franchise agreement executed by and between you and PLA/S.A.V.E! ("Training")  In addition, if and when PLA/S.A.V.E! establishes a Franchise System and offers such franchises in accordance with the Regulations, you will be granted an option and right of first refusal to purchase such a franchise at PLA/S.A.V.E!'s then-current franchise fee with exclusive rights to offer Training that shall extend as follows:

The Area Surrounding the City of Belmont, California & The Non-Exclusive Right to Operate Anywhere in the U.S., Or To Any Person or Group Outside City of Belmont That You Contact First On Behalf of SAVE!™ International

### 4. "You" defined

For the purposes of this Section 2 and Section 3 of this Letter Agreement, "you" shall be deemed to include yourself, and any person or entity owned, controlled by or under common control with you or any such person.

### 5. Confidentiality.

You agree that any information or materials which you obtain from PLA/S.A.V.E! in connection with this Letter Agreement or S-A-V-E™ Training Levels is proprietary to PLA/S.A.V.E!, and shall be kept strictly confidential by you and not disclosed to anyone, utilizing the same degree of care with which you treat your own confidential information, but in no event less than a reasonable degree of care.  You also agree (except as permitted elsewhere in this Letter Agreement) not to teach, show or demonstrate to any person or persons any of the Personal Security and Anti-Violence Training™ -"Martial Arts/Self-Defense" techniques or skills, or any related information that will be taught to you in S.A.V.E! ONE™ and S.A.V.E! ONE™ Expanded Trainer's Training, without first obtaining express written permission from Instructors as defined below.  You also understand that you may not copy or reproduce any written, audio or visual information which you may receive.  You assent to the entry of an injunction against you should you violate this agreement, and acknowledge that damages is an insufficient remedy if you violate this agreement.

# S.A.V.E!™ International
## A Division of Peter Letterese & Associates, Inc.

---

Additionally, wherein you and any of your designates are referred to below as "Trainer" ...

1. SAVE agrees that it shall provide for its Trainers training as prescribed in its S.A.V.E! ONE™ training program, and any additional training SAVE deems may be necessary for said Trainer to perform the duties set forth in the contract of appointment as a Trainer with SAVE.

2. Trainer agrees that any information provided as part of Trainer's training by SAVE including but not limited to any written documents or demonstrations concerning teaching techniques, methodologies, theories, philosophies, scenarios, drills, exercises, technical data, know-how or SAVE policies shall be considered SAVE proprietary information and shall not be disclosed to any person, firm or corporation without the written permission of SAVE or as required by court order.

3. Trainer agrees that SAVE proprietary information not provided as part of Trainer's training but which may become known to trainer from any source including but not limited to financial information, business status, customer information, products, services, customer lists, markets, software, or other SAVE business information shall not be disclosed to any person, firm or corporation without the written permission of SAVE or as required by court order.

4. Trainer agrees not to directly or indirectly solicit, divert or appropriate, or attempt to solicit, divert or appropriate to or for himself or any other company or business organization, any person or entity that was an employee, Trainer, customer or prospective customer, of SAVE. Nor shall Trainer engage in any training on behalf of himself or any other person or entity providing training services based upon proprietary information of SAVE including but not limited to information set forth in par."3" and or par."4" herein above. Nor shall Trainer offer directly for himself, on behalf another person or any entity to offer training in competition with SAVE training or to serve as an employee of another offering training in direct competition with SAVE training or offer to train any person, organization, group or entity, whether for compensation or not, in any training identified by the Trainer as based upon, equal to or the same as SAVE training, without the specific written consent of SAVE. As damages may result in an insufficient remedy for violation of this Agreement, Trainer consents to liability to S.A.V.E!™ International by Trainer in an amount of not less than $250,000 in liquidated damages for each violation of this Agreement.

5. Trainer fully understands the terms and provisions of this Agreement and voluntarily accepts the above terms and provisions.

6. This Agreement contains the entire understanding between the Trainer and SAVE concerning the subject matter contained herein.

---

**S.A.V.E!™ International**
**The Exclusive Source for Survive A Violent Encounter! Training™**
**Worldwide Headquarters – 4919 SW 148th Avenue Davie, FL 33330**
**tel: 954-434-4616 ... fax: 954-434-3479**
**Email: ceo@save-training.com**
3

98 of 212

# S.A.V.E!™ International
## A Division of Peter Letterese & Associates, Inc.

## 6.   Permission

You hereby grant permission to PLA/S.A.V.E! to use your name, likeness, photograph, video-taped image and/or voice in any and all media and media tools, i.e., print, audio and/or visual. You acknowledge that this permission is partial consideration for the training to be received under this Agreement. You also understand that you will not be entitled to receive any other compensation for the foregoing (except as stipulated in this Letter Agreement).

## 7.   Limitation of PLA/S.A.V.E!'s Liability.

By this Letter Agreement, you hereby release Richard E. Clear, Jr. Clear's Silat, Inc., and Iron Dragon, Inc. dba Pentjak Silat of Florida and Executive Transformations, and Peter Letterese and Peter Letterese & Associates, Inc., Galileo® Systems International, S.A.V.E!™ International, S.A.V.E! International, Inc., (hereinafter "Instructors") as well as all staff and Directors of S.A.V.E!™ International and Galileo® Systems International and S.A.V.E! International, Inc. for any and all possible personal injury or other damages which may occur on account of or in connection with S.A.V.E! ONE™ and S.A.V.E! ONE™ Expanded™ Trainer's Training (as detailed in this Letter Agreement) you are about to receive in Personal Security and Anti-Violence Training™ -Martial Arts/Self-Defense, and waive all rights to recover from the foregoing parties in the event of any injury or damage of any type or kind, direct, indirect or consequential. You herein recognize that this training inherently involves physical contact that can result in unintentional or unexpected injury or damage. This risk includes errors which may be made by your fellow students, whom you likewise release in respect to such possible injury or damage. You do this with an appreciation for the risks involved, which you do willingly accept. You further recognize that but for this Release and Waiver, you would not be permitted to participate in this program and course of study. You understand that by signing you are unable to seek damages, relief, remuneration or compensation of any kind. You further assert that this Release and Waiver is intended to be binding upon your heirs, estate and assigns. ANY LIABILITY INCURRED BY PLA/S.A.V.E! PURSUANT TO THIS AGREEMENT SHALL BE LIMITED TO REFUND OF THE TRAINING FEES TO YOU. PLA/S.A.V.E! SHALL NOT BE RESPONSIBLE OR LIABLE TO YOU OR TO ANY THIRD PARTY, WHETHER IN CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, FOR ANY DAMAGES, INCLUDING, BUT NOT LIMITED TO, SPECIAL, INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES THAT INCLUDE, BUT ARE NOT LIMITED TO, DAMAGES FOR ANY LOSS OF PROFIT, REVENUE OR BUSINESS, EVEN IF PLA/S.A.V.E! HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT SHALL PLA/S.A.V.E!'S LIABILITY EXCEED THE AMOUNT OF THE TRAINING FEES, OR EXTEND TO ANY MATTER BEYOND PLA/S.A.V.E!'S REASONABLE CONTROL.

## 8.   Limitation of Warranties

EXCEPT AS EXPRESSLY STATED IN THIS LETTER AGREEMENT, ALL TRAINING PROVIDED TO YOU, INCLUDING, WITHOUT LIMITATION, S.A.V.E! ONE™ and S.A.V.E! ONE™ Expanded TRAINER'S TRAINING, IS PROVIDED "AS IS"

# S.A.V.EI™ International
## A Division of Peter Letterese & Associates, Inc.

WITHOUT WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO WARRANTIES OF PERFORMANCE, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE.

## 9. Governing Law

This Letter Agreement and all transactions contemplated by this Letter Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Florida as regards to conflicts of laws.

## 10. Enforcement Costs

If any legal action or other proceeding is brought for the enforcement of this Letter Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with any provisions of this Letter Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorney's fees, court costs and all expenses even if not taxable as court costs (including, without limitation, all such fees, costs and expenses incident to appeals), incurred in that action or proceeding, in addition to any other relief to which such party or parties may be entitled.

## 11. Specific Performance

You acknowledge that PLA/S.A.V.EI will be irreparably damaged (and damages at law would be an inadequate remedy) if this Letter Agreement is not specifically enforced. Therefore, in the event of a breach or threatened breach by you of any provision of this Agreement, then PLA/S.A.V.EI shall be entitled, in addition to all other rights or remedies, to injunctions restraining such breach, without being required to show any actual damage or to post any bond or other security, and/or to a decree for specific performance of the provisions of this Letter Agreement.

## 12. Counterparts

A facsimile copy of this Letter Agreement and any signatures hereon shall be considered for all purposes an original, and this Letter Agreement may be executed by two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same agreement by and among all parties hereto.

## 13. Survival

Sections 2 through 13 of this Letter Agreement shall survive the completion of the S.A.V.EI™ Training, or any termination of this Letter Agreement for any reason.

Please acknowledge our agreement by counter-signing this Letter Agreement below and returning an executed copy directly to me.

---

**S.A.V.EI™ International**
**The Exclusive Source for Survive A Violent Encounter! Training™**
**Worldwide Headquarters - 4919 SW 148ᵗʰ Avenue Davie, FL 33330**
**tel: 954-434-4616 _ fax: 954-434-3479**
**Email: ceo@save-training.com**
5

# S.A.V.E!™ International
## A Division of Peter Letterese & Associates, Inc.

On Behalf of S.A.V.E! International

Peter Letterese, CEO & Director of Program Development

Agreed to and accepted:

Dr. Schwartz

3-1-04
Date

101 of 212

# S.A.V.E!™ International

## A Division of Peter Letterese & Associates, Inc.



# Exhibit A

Ω THE CURRICULUM FOR **S.A.V.E! ONE**™ and **S.A.V.E! ONE**™ Expanded ™ **Trainer's Training** (S.A.V.E! Training™ Level Three™ inclusive through S.A.V.E! Training™ Level Twenty™), are officially titled as of this date as follows:

- S.A.V.E! Training™ Level **Three**™ - The basics of handling and surviving a knife attack – 1 Day (Individual Training)

- S.A.V.E! Training™ Level **Four**™ – The basics of handling and surviving a gun attack – 1 Day (Group Training)

- S.A.V.E! Training™ Level **Five**™ – The complete basics of handling and surviving an attack by up to 3-5 (more intelligent, better organized) multiple attackers – 1 Day (Group Training)

- S.A.V.E! Training™ Level **Six**™ – Review and refine S.A.V.E! Training™ Level One™; Introduction to S.A.V.E! Training™ Level Seven™ – 1 Day (Individual or Small Group Training)

# S.A.V.E!™ International
## A Division of Peter Letterese & Associates, Inc.

- S.A.V.E! Training™ Level **Seven**™ – Sticky Hands/Push Hands Training/Slow Motion Fighting/Body Skills Training (Low effort repelling of a grappling attacker; control/negate an attacker's body position, movement and ability to attack at all) – 1 Day (Individual or Small Group Training = 1 Student per Instructor)

- S.A.V.E! Training™ Level **Eight**™ – Serak Punch & Bone Shields (Explosive Hitting from 6-8 Feet Away); Can shield self from a 360-degree attack, drop attackers one at a time, resuming full shielding of your own body – 1 Day (Individual or Small Group Training)

- S.A.V.E! Training™ Level **Nine**™ – Advanced S.A.V.E! Training™ Level One™; Increase up toward a complete ability to project (when needed to survive a violent encounter) "The Wind of Hate" back at an attacker; Training in the Mindset needed to back off an attacker without touching; Precision control of where an attacker lands as a result of your strike - 1 Day (Individual or Small Group Training = 2 Students per Instructor)

103 of 212

# S.A.V.E!™ International

## A Division of Peter Letterese & Associates, Inc.

- S.A.V.E! Training™ Level **Ten**™ – COBRA & Advanced One-Touch Knockouts; Attacker is either down definitely, or if standing is unable to strike so much as a glancing blow; COBRA is a killing blow based upon a very advanced compression technique; From 8-10 feet away, close distance on a board and shatter it before holder could react; Holder must have finger protection and eye protection) and must hold board at full extension – 1 Day (Individual Training) –

- S.A.V.E! Training™ Level **Eleven**™ - Review Level Seven™ thru Level Ten™ & Advanced Grappling & The Mind Hit; Learn Advanced Grapples – 1 Day (Individual or Small Group Training = 2 Students per Instructor)

- S.A.V.E! Training™ Level **Twelve**™ - Advanced Knife and Defense Against Other Weapons & Close-Up Guns/Also Escaping from Advanced Grapples/Holds; Drop Knife Attacker before he gets a Chance to Use it; Not on Defensive against Knife … On Offensive – 1 Day (Individual or Small Group Training = 2 Students per Instructor)

- S.A.V.E! Training™ Level **Thirteen**™ – Next-Level-Advanced Multiple Attackers (the next highest intelligent and next best organized Multiple Attackers) – 1 Day (Group Training)

# S.A.V.E!™ International
## A Division of Peter Letterese & Associates, Inc.

- S.A.V.E! Training™ Level **Fourteen**™ - Chi Kung Healing -- Confidential Level – Ensures student is able and willing to correct any physical harm done another in combat as necessary, where lethal force was NOT necessary to survive a violent encounter – 1 Day (Group Training)

- S.A.V.E! Training™ Level **Fifteen**™ - Tai Chi Fighting (No-Effort Fighting); gaining use of the Whole Body; Power Without Exerting Effort – 1 Day (Individual or Small Group Training)

- S.A.V.E! Training™ Level **Sixteen**™ - Advanced Pressure-Point Fighting; Hitting Pressure Points on arm and leg that disable Opponents' ability to fight and building upon previous One-Touch Skills – 1 Day (Individual or Small Group Training = 2 Students per Instructor)

- S.A.V.E! Training™ Level **Seventeen**™ – Highest Level Multiple Attackers (Smart, armed, organized, as in trained, Special Forces' Attackers, Eventual Skill Level modified by student age and physical condition) - 1 Day

- S.A.V.E! Training™ Level **Eighteen**™ – Advanced Fighting Skills (Hitting Without Physically Touching Opponents At All) – 1 Day (Individual/Small Group with a Maximum of 6 Students, Total)

105 of 212

# S.A.V.E!™ International

## A Division of Peter Letterese & Associates, Inc.

---

- S.A.V.E! Training™ Level **Nineteen**™ - Advanced Teacher/Teaching Skills for S.A.V.E! ONE™ and S.A.V.E! ONE™ Expanded - 3 Days Individual Training plus Apprenticeship of 12 Months

- S.A.V.E! Training™ Level **Twenty**™ – Highest-Level Teacher/Teaching Skills for S.A.V.E! ONE™ and S.A.V.E! ONE™ Expanded – 3 Days Individual Training plus Apprenticeship of 12 Months

Mar 01 04 09:37p

# S.A.V.E!™ International
### A Division of Peter Letterese & Associates, Inc.
### 4919 SW 148ᵗʰ Ave. Davie, Florida 33330
### Telephone: 800-425-4536   Fax: 954-434-7152

---

Dr. Marc A. Schwartz                              March 1, 2004
1600 El Camino Real, Suite A
Belmont, CA 94002


**Addendum Letter Agreement :::**
   **S.A.V.E! One™ & S.A.V.E! One™ Expanded Trainer's Training**

1. In consideration of immediate payment of $125,000 (US) discounted from $195,000 (US) Peter Letterese & Associates, Inc., and dba S.A.V.E!™ International will deliver the following services to Dr. Marc A. Schwartz in the following manner:

2. For any leads outside of the State of California the Co-Marketing/Co-Selling Agreement is hereby amended that Dr. Schwartz will receive Finder's Fees of 20% of the gross fees collected for all courses paid for in full in advance and completely delivered.

3. Dr. Schwartz agrees to work with Peter Letterese & Associates, Inc., and dba S.A.V.E!™ International in order to assist him to locate the funds. Dr. Schwartz does not have the $125,000 immediately to pay but is willing to work closely with Peter Letterese & Associates, Inc., and dba S.A.V.E!™ International to locate these funds.

4. Non-mandatory Option to take on Southern California: for one year he has the option to pay balance of money until it reaches maximum of $300,000 sometime before the end of one year.

5. May operate in So. California and benefit from it for the whole year for just the $125,000 (paid in full, as soon as possible) and gets all derivative benefits from connected paid projects that come DIRECTLY from his efforts there for one year, even if he never takes on So. California permanently.

1

P-2

Mar 01 04 09:37P

Page 2 of 2 for Addendum Letter Agreement :::
   S.A.V.E! One™ & S.A.V.E! One™ Expanded Trainer's Training

6. The $125,000 for Assistant SII Belmont becomes part of GSI guarantee after 2 years of GSI - refund on same terms if he gets GSI refund, he gets SII refund as well (if he wants it) of $125,000.

7. Should he exercise option for So. California by end of one year, no refund clause shall remain. **He can choose to simply not exercise the So. California option** and stay in Belmont only, thereafter too - but if he elects to exercise that option he does NOT retain a refund option on any of the SII $$$$ at the end of 2nd year. (Reason is, by then the Southern California area will go for much more than $300,000 - probably closer to double that, minimum.)

8. Peter Letterese & Associates, Inc., and dba S.A.V.E!™ International will assist by making any of the payments for the 1st (4) months on the loan/loans for this service that Dr. Schwartz is not able to make himself. On any payment that he would need such assistance, Dr. Schwartz agrees to fax over the statement to Barbara Fawcett and ensure she receives a clear copy from which to make the – payment. Any payment that would be made in this manner for Schwartz would not be considered owed to Peter Letterese & Associates, Inc. and dba S.A.V.E!™ International until the end of the loan/loans unless Dr. Schwartz wished to reimburse Peter Letterese & Associates, Inc. and dba S.A.V.E!™ International for any payment sooner than that time.

9. Dr. Schwartz agrees to keep completely confidential the fees and terms of this agreement which includes the contents of this document. The only exception is to members of his family and he further agrees to ensure that they too will keep all fees and terms completely confidential.

On behalf of S.A.V.E!™ International

_____          March 1, 2004
Barbara Fawcett, Exec. VP for Operations          Date

_____          3 - 1 — 04
Dr. Marc A. Schwartz, Belmont, CA          Date

2

## S.A.V.E!™ International
### A Division of Peter Letterese & Associates, Inc.
4919 SW 148ᵗʰ Ave. Davie, Florida 33330
Telephone: 800-425-4536  Fax: 954-434-7152

Dr. Marc A. Schwartz                              May 21, 2004
1600 El Camino Real, Suite A
Belmont, CA 94002

**Addendum Letter Agreement :::**
**S.A.V.E! One™ & S.A.V.E! One™ Expanded Trainer's Training**

1. I hereby relinquish all rights to the Non-mandatory Option to take on Southern California. As of this signing I am dropping all rights that I held for the one year option to pay balance of money until it reaches maximum of $300,000 sometime before the end of one year.

2. ~~As of this signing I am relinquishing all rights and benefits other than what is stated in my original S.A.V.E! contract and Co-Marketing/Co-Selling Agreement to operate in So. California.~~

3. Dr. Schwartz agrees to keep completely confidential the fees and terms of this agreement which includes the contents of this document. The only exception is to members of his family and he further agrees to ensure that they too will keep all fees and terms completely confidential.

On behalf of S.A.V.E!™ International

_____                          5-21-04
Barbara Fawcett, Exec. VP for Operations            Date

_____                          5-24-04
Dr. Marc A. Schwartz, Belmont, CA                   Date

5-23-04

*(handwritten margin notes: "This point is not agreed to. 5-23-04 ... 5-23-04 ... 12:50 am" and "YOU MUST SIGN HERE & FAX BACK")*

Galileo® Systems International
4919 SW 148th Ave. Davie, Florida 33330
Telephone: 800-425-4536   Fax: 954-434-7152

Dr. Marc A. Schwartz                           July 16, 2004
1600 El Camino Real, Suite A
Belmont, CA 94002

**Addendum Services Contract :::**
Galileo® Advanced Management Mentoring 2003 5-Year Program
Galileo® Simulator™ Training for Certification
as a Designated Galileo® Simulator™ Site

1. In consideration of the immediate payment of the discounted fee of $65,000 (US) from $125,000 (US) Galileo® Systems International agree to the contracted services to Dr. Marc A. Schwartz in the following manner:

2. In exchange for this payment and the immediate endorsement of this Addendum, Galileo® Systems International agrees that the Galileo® Simulator™ Training for Certification as a Designated Galileo® Simulator™ Site falls under the original Galileo® Advanced Management Mentoring 2003 5-Year Program contract, signed on Dec 11th, 2003, and all of it's terms with the following exceptions:
   a. The "Special Terms Money-Back Guarantee" clause does not apply to this $65,000 (US) fee paid for the Galileo® Simulator™ Training for Certification as a Designated Galileo® Simulator™ Site.

   b. Dr. Schwartz's status as a Designated Galileo® Simulator™ Site is considered permanent and exceeds the length of the original Galileo® Advanced Management Mentoring 2003 5-Year Program contract.

3. This addendum amends and expands the "Special Terms: Partial List of Dr. Schwartz's Chief Concerns" Point #2 **"Reduction of All Debt......in 3 years from the date of signing......"**(this date for reduction of all debt is Dec 11th, 2006) to include all debt incurred for the Galileo® Advanced Management Mentoring 2003 5-Year Program Fee, S.A.V.E! One™ & S.A.V.E! One™ Expanded Trainer's Training Fee & this Galileo® Simulator™ Training for Certification as a Designated Galileo® Simulator™ Site Fee.

1  7-16-04

Page 2 of 3 for Addendum Services Contract :::
Galileo® Advanced Management Mentoring 2003 5-Year Program
Galileo® Simulator™ Training for Certification
as a Designated Galileo® Simulator™ Site

4. Dr. Tom Karas and his Office Manager will assist to rapidly bring Dr. Schwartz to the "near-perfect standards" with his application of the Galileo® Advanced Management Mentoring materials that are required of a Designated Galileo® Simulator™ Site.

5. Upon Dr. Schwartz's attainment of the standards required of a Designated Galileo® Simulator™ Site, Galileo® Systems International will pay Dr. Schwartz a fee of $10,000(less the cost of supplying a qualified S.A.V.E! One™ Trainer) for each office he successfully brings thru the Galileo® Simulator™ upon their completion. Once Dr. Schwartz can provide his own qualified S.A.V.E! One™ Trainer he will then receive the full $10,000 fee.

6. Dr. Schwartz will be given the Right of 1st Refusal for all Galileo® Simulator™ students once he starts delivering this service. Dr. Schwartz must be in good standing with the Galileo® Advanced Management Mentoring Program in order to be routed students for the Galileo® Simulator™. At his discretion, Dr. Schwartz may elect that any of these students train at Dr. Karas' site.

7. In exchange for the immediate endorsement of this Addendum and immediate payment of this Galileo® Simulator™ Training for Certification as a Designated Galileo® Simulator™ Site Fee, Galileo® Systems International agree, at No-Charge to Dr. Schwartz, the installation and training on software, once piloted and established effective, for the Tracking of Galileo® Patients.

8. In exchange for the immediate endorsement of this Addendum Dr. Schwartz agrees to keep completely confidential the fees and terms of this agreement which includes the contents of this document. The only exception is to members of his family and he further agrees to ensure that they too will keep all fees and terms completely confidential.

2
7-16-04

Page 3 of 3 for Addendum Services Contract :::
Galileo® Advanced Management Mentoring 2003 5-Year Program
Galileo® Simulator™ Training for Certification
as a Designated Galileo® Simulator™ Site

On behalf of Galileo® Systems International:

_(signature)_                              7-16-04
_____              _____
Barbara Fawcett, Executive VP for Operations     Date

_(signature)_                              7-16-04
_____              _____
Marc A. Schwartz, Belmont, California           Date

3
7-16-04
MS

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY, FLORIDA

CASE # CACE 07-13211 03

CREATIVE DESPERATION, INC.
etc et al

     Plaintiff(s),

vs.

AMERICAN ARBITRATION ASSOCIATION,
INC. a New York Corporation,

     Defendant(s).

_____/

PARTIAL FINAL DEFAULT JUDGMENT IN FAVOR OF PLAINTIFFS CREATIVE
DESPERATION INC. and PETER LETTERESE AGAINST DEFENDANT AMERICAN
ARBITRATION ASSOCIATION, INC. FOR COUNTS I AND II OF PLAINTIFFS
COMPLAINT

THIS CAUSE came onto be heard on October 16, 2007 upon
Plaintiffs CREATIVE DESPERATION, INC. F/K/A PETER LETTERESE &
ASSOCIATES, INC. a Florida Corporation D/B/A  GALILEO SYSTEMS
INTERNATIONAL and PETER LETTERESE INDIVIDUALLY ("Plaintiffs")
Motion for Final Default Judgment against Defendant AMERICAN
ARBITRATION ASSOCIATION INC. ("Defendant AAA") for Count I
Declaratory Relief and Count II Injunction and the Court having
reviewed the Court file, affidavit of Plaintiffs, noting no counter
affidavits or memoranda filed by Defendant AAA, entertaining oral
argument of counsel and being duly apprised in the premises
thereto, does hereby:

ORDER AND ADJUDGE the following Findings of Fact:

1. Plaintiffs filed its complaint for Declaratory Relief,
injunction and damages against Defendant AAA and others.

2. Defendant AAA was properly served on June 11, 2007.

3. The Clerk of the Court pursuant to Fla Rul Civ Pro 1.500
entered a default against Defendant AAA on July 3, 2007 for

Defendant AAA failure to respond timely to the complaint.

4. This Court has denied Defendant AAA motion to vacate the default and motion for rehearing on same and denied Defendant AAA amended motion to vacate finding that the Defendant AAA motions are legally insufficient.

5. Plaintiffs have dropped the other parties from the litigation without prejudice.

6. By virtue of the Default, Defendant AAA has admitted the allegation of the complaint in accordance with Fla Rul Civ Pro. 1.500.

7. Plaintiff has filed an affidavit supporting the allegations of Count I for Declaratory Relief.

8. Plaintiff has filed an affidavit supporting the allegations of Count II for injunctive relief.

9. Based upon the complaint and sworn affidavit and with counter affidavit or other filings permitted by this Court, the Court finds that this Court has jurisdiction over the subject matter and the parties hereto.

10. The Court finds that Defendant AAA has violated the contractual terms of arbitration of Plaintiffs with third parties by seeking to arbitrate where there was no agreement to arbitrate with the Defendant AAA and that Defendant AAA lacked subject matter jurisdiction conferred by any agreement of arbitration.

11. The Court finds that Defendant AAA has violated its own rules of Commercial Arbitration such that Plaintiffs can not obtain a fair and neutral arbitration proceeding.

12. The Court finds that Defendant AAA has violated Florida

2

Statute 682 and that there is no agreement to arbitrate between Plaintiffs and Defendant AAA as required by Florida Statue such that Plaintiffs can not obtain a fair and neutral arbitration proceeding.

13. Plaintiffs complaint and supporting affidavit demonstrate that Plaintiffs would be irreparably harmed by having to arbitrate any proceeding in which the Defendant AAA is the arbitrating body based upon Defendant AAA failure to follow the contractual terms of any arbitration agreement, failure to comply with the Defendant AAA Commercial Rules of Arbitration, failure to provide a contract requiring arbitration before the Defendant AAA and failure to comply with Florida Statute 682.

14. Plaintiffs are entitled to permanent injunction barring the Defendant AAA from arbitrating any arbitration matters with Plaintiffs to prevent further irreparable harm to the Plaintiffs.

15. The Court finds Plaintiffs are entitled to arbitrate as provided under their contracts, with private arbitrators not Defendant AAA.

16. Plaintiffs are not required to arbitrate with Defendant AAA under the contracts provided in this litigation, or any other contract which does not expressly name Defendant AAA as the designating arbitrators.

17. Plaintiffs have shown that Plaintiffs are not required to arbitrate with Defendant AAA.

IT IS THEREUPON ORDERED AND ADJUDGED THE FOLLOWING:

1. The Court enters Final Default Judgment as to Count I Declaratory Judgment in favor of Plaintiffs CREATIVE DESPERATION,

3

INC. F/K/A PETER LETTERESE & ASSOCIATES, INC. a Florida Corporation
D/B/A  GALILEO SYSTEMS INTERNATIONAL and PETER LETTERESE against
Defendant AMERICAN ARBITRATION ASSOCIATION INC. declaring that
there is no agreement to arbitrate with Plaintiffs and Defendant
AAA and that Defendant AAA has no subject matter jurisdiction to
arbitrate with Plaintiffs.

2.    This Court grants Final Default Judgment in favor of
Plaintiffs against Defendant AAA as to Count II. Defendant AAA is
permanently enjoined from any pending arbitration or future
arbitration with respect to Plaintiffs.  Any pending arbitration
may not proceed with Defendant AAA as the arbitrating body or any
arbitrators selected by the Defendant AAA. No fees claimed by
Defendant AAA from Plaintiffs shall be paid and any claims for fees
are hereby voided and canceled from any pending arbitration
including any arbitration for which an award was entered which
award has not been confirmed.

3. This Court permanently enjoins the Defendant AAA from
enforcing or rendering any arbitration award with respect to
Defendant AAA as the arbitrator and holds any arbitration award
which has not been confirmed or paid, to be null and void for lack
of subject matter jurisdiction of Defendant AAA.

4.    This Final Default Judgment is not a decision on the
merits of any underlying arbitration award but merely voids the
award without prejudice.  This Final Default Judgment does not bar
any party other than Defendant AAA from seeking to enforce any
arbitration contract terms nor bar the right to compel arbitration
under any contract that may provide for arbitration with Plaintiffs

4

07-13211(03)

with arbitrators other than Defendant AAA.   This Final Default Judgment removes Defendant AAA as the arbitrators with the Plaintiffs.

5. The Court retains jurisdiction to enforce this Default Final Judgment, to modify same and to consider Count III damages which shall require a separate evidentiary hearing.

6. Any claim for attorney fees or costs shall be reserved until the final evidentiary hearing as to Count III damages.

DONE and ORDERED in Fort Lauderdale, Broward County, Florida this __16__ day of October 2007.

CIRCUIT JUDGE
PATTI HENNING

TRUE COP

Copies furnished:

John Aristia Esq
Counsel for Defendant AAA
1001 Brickell Bay Drive  Suite 2002
Miami Fl 33131

Keith A. Gasman Esq
Co Counsel for Plaintiffs
2929 E. Commercial Blvd Suite 702
Fort Lauderdale, Fl. 33308

Charles D. Franken Esq.
Co Counsel for Plaintiffs
8181 W. Broward Blvd # 360
Plantation, Fl 33324

Address for Plaintiff:
CREATIVE DESPERATION, INC.
and Peter Letterese
4581 Weston Road # 306
Weston Fl 33331

5

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT, IN
AND FOR BROWARD COUNTY,
FLORIDA

CASE NO.: CACE06007926

DR. MARC A. SCHWARTZ )
and SCHWARTZ DENTAL PRACTICE, )
)
Plaintiffs, )
)
v. )
)
PETER LETTERESE, individually, and )
PETER LETTERESE AND ASSOCIATES, INC., )
a Florida corporation, )
)
Defendants. )
_____)

## FINAL JUDGMENT

THIS CAUSE came before this Court on Plaintiffs' Motion to Confirm Arbitration Award, and the Court having been notified of same, having heard argument from counsel for all parties and being otherwise duly advised in the premises, it is hereby **ORDERED AND ADJUDGED,** as follows:

1.     On July 30, 2007, a final arbitration hearing involving the parties to this action was heard before the American Arbitration Association (the "AAA"), Case Number 32 180 00027 06, in Fort Lauderdale, Florida.

2.     On September 21, 2007, the Arbitrators entered an award (the "Award"). Pursuant to the Award, Schwartz is the prevailing party.

3.     The Award finds that Defendants are liable to Schwartz in the amount of One Hundred Seventy-Nine Thousand Nine Hundred Fifty Dollars and No Cents ($179,950.00), further awarding eleven (11%) percent interest per annum, AAA filing fees, AAA case service

fees, and the Arbitrators' fees and expenses. ~~The AAA and Arbitrators' fees and expenses for which Defendants must reimburse Schwartz are a total of Seventeen Thousand Three Hundred Thirty and Seventy-Five Cents ($17,330.75).~~  *(R E)*

4.      Schwartz is also entitled to its attorneys' fees and costs pursuant to the Galileo Advanced Management Mentoring 2003 5-Year Standard Contract dated December 9, 2003, and the Addendum Services Contract for the Galileo Simulator Training for Certification as a Designated Galileo Simulator Site dated July 16, 2004 entered into between the parties.

5.      The Court awards Plaintiffs the amount of One Hundred Seventy-Nine Thousand Nine Hundred Fifty Dollars and No Cents ($179,950.00), further awarding eleven (11%) percent interest per annum, AAA filing fees, AAA case service fees, and the Arbitrators' fees and expenses.

6.      ~~The Court further awards Plaintiffs the AAA and Arbitrators' fees and expenses which total Seventeen Thousand~~ Three Hundred Thirty and Seventy-Five Cents ($17,330.75). *(R E)*

7.      Additionally, as the prevailing party in this action and as per the terms of the contract between the parties, Plaintiffs are entitled to recover from Defendants its reasonable attorney's fees and costs incurred in this matter. The Court hereby retains jurisdiction for the purpose of conducting a hearing to determine such amount and for any and all further Orders and Judgments as necessary and proper associated with the Plaintiffs' execution of this Order and the award of such attorney's fees and costs associated therewith, *INCLUDING ALL FEES PAID TO THE AAA BY PLAINTIFFS.* *(R E)*

Let execution issue forthwith.

03/28/2008  19:57     9545232204          JAMES PEDLEY ESQ                    PAGE  11/11

*Schwartz v. Letterese, et al.*
Case No.: CACE06007926
Final Judgment

DONE AND ORDERED in Chambers, in Broward County, Florida, this __27__ day of March, 2008.

The Honorable Richard D. Eade,
Circuit Court Judge

Copies furnished to:
Simeon D. Brier, Esq.
James K. Pedley, Esq.

- 3 -

120 of 212

03/28/2008   19:57   9545232204          JAMES PEDLEY ESQ                    PAGE  02/11

DR. MARC A. SHWARTZ

IN THE CIRCUIT COURT OF THE SEVENTEENTH
JUDICIAL CIRCUIT IN AND FOR BROWARD
COUNTY, FLORIDA

V.

)

CASE NO.:

PETER LETTERESE,

)

CACE   06-007926

ET AL

)

)

_____ )

THIS CAUSE having come on to be heard on Defendant's/Plaintiff's **~~ORDER~~**   **MOTION**

**VACATE**

Motion _____

and the Court having heard argument of counsel, and being otherwise advised in the Premises, it is hereupon,

ORDERED AND ADJUDGED said Motion be, and the same is hereby  **DENIED. COURT HAS PREVIOUSLY HEARD ARGUMENTS OF ALL COUNSEL AND PREVIOUSLY DENIED MOTION ON ALL GROUNDS RAISED IN ALL MOTIONS TO VACATE THE AMERICAN ARBITRATION ASSOCIATION'S FINAL AWARD. COURT SIMPLY FAILED TO ENTER A PRIOR ORDER ON THESE ISSUES.**

DONE AND ORDERED in Chambers, at Fort Lauderdale, Broward County, Florida this _**27**_
day of _**MARCH**_, _**2008**_

_____
CIRCUIT JUDGE

Copies furnished: Defendant, Plaintiff
BC 118 (Rev. 10/99)

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT, IN
AND FOR BROWARD COUNTY,
FLORIDA

CASE NO.: CACE06007929 (05)

DR. SCOTT L. BRODY,                              )
                                                 )
        Plaintiff,                               )
                                                 )
v.                                               )
                                                 )
PETER LETTERESE, individually, PETER             )
LETTERESE & ASSOCIATES, INC., d/b/a              )
GALILEO SYSTEMS INTERNATIONAL and                )
d/b/a S.A.V.E! INTERNATIONAL,                    )
                                                 )
        Defendants.                              )
                                                 )
_____      )

## FINAL JUDGMENT

THIS CAUSE came before this Court on Plaintiff's Amended Motion to Confirm Arbitration Award, and the Court having been notified of same, having heard argument from counsel for all parties, and being otherwise duly advised in the premises, it is hereby **ORDERED AND ADJUDGED**, as follows:

1.     On June 11, 2007, a final arbitration hearing involving the parties to this action was heard before the American Arbitration Association (the "AAA"), Case Number 32 181 00057 06, in Fort Lauderdale, Florida.

2.     On July 10, 2007, the Arbitrator entered an award with findings that Defendants are liable to Brody in the amount of Three Hundred and Ten Thousand Five Hundred Dollars and No Cents ($310,500.00), further awarding uncalculated interest, AAA filing fees, AAA case service fees, and the Arbitrators' fees and expenses. ~~The AAA and Arbitrator fees and expenses~~

*Brody v. Letterese, et al.*
Case No.: CACE06007929 (05)
Final Judgment

~~for which Defendants must reimburse Brody are Eleven Thousand Six Hundred and Ten Dollars~~
~~and No Cents ($11,610.00).~~  *R E*

3.    Plaintiff is also entitled to its attorneys' fees and costs pursuant to the Galileo
Advanced Management Mentoring 2004 5-Year Standard Contract dated February 27, 2004, the
S.A.V.E! International Letter Agreement dated April 5, 2004, and the Addendum Services
Contract for the Galileo Simulator Training for Certification as a Designated Galileo Simulator
Site dated December 7, 2004 entered into between the parties.

4.    The Court awards Plaintiff the amount of Three Hundred and Ten Thousand Five
Hundred Dollars and No Cents ($310,500.00), further awarding uncalculated interest, AAA
filing fees, AAA case service fees, and the Arbitrators' fees and expenses.

~~5.    The Court awards Plaintiff the AAA and Arbitrator fees and expenses in the
amount of Eleven Thousand Six Hundred and Ten Dollars and No Cents ($11,610.00).~~  *R E*

6.    Additionally, as the prevailing party in this action and as per the terms of the
contract between the parties, Plaintiff is entitled to recover from Defendants its reasonable
attorney's fees and costs incurred in this matter.  The Court hereby retains jurisdiction for the
purpose of conducting a hearing to determine such amount and for any and all further Orders and
Judgments as necessary and proper associated with the Plaintiff's execution of this Order and the
award of such attorney's fees and costs associated therewith, *INCLUDING ALL FEES*
*PAID TO AAA BY PLAINTIFF*
Let execution issue forthwith.  *R E*

DONE AND ORDERED in Chambers, in Broward County, Florida, this *27* day of
March, 2008.

The Honorable Richard D. Eade
Circuit Court Judge

-2-

*Brody v. Letterese, et al.*
Case No.: CACE06007929 (05)
Final Judgment

Copies furnished to:
Simeon D. Brier, Esq.          —                    . . .
James K. Pedley, Esq.

- 3 -

PMB 351225.1

03/28/2008 19:57 9545232204      JAMES PEDLEY ESQ      PAGE 05/11

DR. L.SCOTT BRODY

IN THE CIRCUIT COURT OF THE SEVENTEENTH
JUDICIAL CIRCUIT IN AND FOR BROWARD
COUNTY, FLORIDA

V.

PETER LETTERESE,
ET AL.

CASE NO.: *CACE 06-007929 (05)*

)
)
)
)
)
_____ )

2008 MAR 27 AM 11:59
RECEIVED
CLERK, COUNTY COURT
BROWARD COUNTY
COPY/VIEW ROOM

**ORDER**

THIS CAUSE having come on to be heard on Defendant's Plaintiff's _MOTION TO VACATE_

Motion _____

and the Court having heard argument of counsel, and being otherwise advised in the Premises, it is hereupon,

ORDERED AND ADJUDGED said Motion be, and the same is hereby _DENIED._ ~~RULED~~ COURT HAS PREVIOUSLY HEARD ARGUMENTS OF ALL COUNSEL AND PREVIOUSLY DENIED MOTION ON ALL GROUNDS RAISED IN ALL MOTIONS TO VACATE THE AMERICAN ARBITRATION ASSOCIATION'S FINAL AWARD. COURT SIMPLY FAILED TO ENTER A PRIOR ORDER ON THESE ISSUES.

DONE AND ORDERED in Chambers, at Fort Lauderdale, Broward County, Florida this 27

day of _March_ , _2008_

_____
CIRCUIT JUDGE

# AMERICAN ARBITRATION ASSOCIATION
## Commercial Arbitration Tribunal

In the Matter of the Arbitration between

Re: 32 180 00027 06
Dr. Marc A. Schwartz and Schwartz Dental Practice (Claimant)
and
Peter Letterese, Individually, Peter Letterese &
Associates, Inc., Galileo Systems International,
and SAVE! International (Respondents)

## FINAL AWARD OF ARBITRATORS

WE, THE UNDERSIGNED ARBITRATORS having been designated in accordance with the arbitration clause in paragraph 8 of the Advanced Management Mentoring 2003 5-Year Standard Contract dated December 11, 2003 (the "Galileo Contract" or the "Contract") and the Addendum Services Contract dated July 16, 2004 (the "Site Simulator Contract" or the "Addendum") entered into between DR. MARC A. SCHWARTZ d/b/a SCHWARTZ DENTAL PRACTICE ("CLAIMANT") and PETER LETTERESE & ASSOCIATES, INC. ("PLA") by and through its fictitious name GALILEO SYSTEMS INTERNATIONAL ("GSI") ("RESPONDENT") and having otherwise been duly appointed under the rules of the American Arbitration Association and having been duly sworn, do hereby make the following FINDINGS OF FACT, GROUNDS FOR DECISION and CONCLUSIONS OF LAW:

### A.    PROCEDURE.

1.    RESPONDENT through their counsel filed herein Objections to the Appointment of this Panel of Arbitrators, a Denial of All Allegations and Motions to Stay This Arbitration in the Circuit Court of the Seventeenth Judicial Circuit for Broward County, Florida. The Circuit Court denied the Objections and Motions, which Decisions are pending on appeal.

{M2585999;1}


EXHIBIT
A

However, no Stay of the Arbitration has been obtained. Counsel for RESPONDENT JAMES K.

PEDLEY ("PEDLEY") appeared at the Preliminary Hearing and at the Final Hearing but advised

that he was instructed (as confirmed in the "Objection to This Arbitration Pleading dated

May 18, 2007) to "cease any participation in this arbitration." PEDLEY did not offer any

evidence nor cross examine any witness nor object to the admission of any evidence nor did he

proffer any evidence on behalf of any of the RESPONDENTS.

      2.    CLAIMANT MARC A. SCHWARTZ, and CLAIMANT'S Witnesses,

Diane X. Vader, Terra Purcell and Dr. L. Scott Brady all were duly sworn and testified by

telephone.

      3.    CLAIMANT's Exhibits 1 and 3 through 27 inclusive as indexed in

CLAIMANT's Final Hearing Notebook were duly admitted into evidence.

### B.    FINDINGS OF FACT AND GROUNDS FOR DECISION.

      1.    <u>Individual Responsibility of PETER LETTERESE ("LETTERESE")</u>. On

March 7, 2007 LETTERESE through counsel filed a Denial of All Allegations and Motion to

Stay Arbitration where in paragraph 2 he stated "that this arbitration cannot include him as he is

not a signatory to any arbitration agreement and any position of this arbitration panel is not

binding on him individually." No evidence was submitted to prove that LETTERESE signed the

Contract and the Addendum in his individual capacity, but rather the Contract was signed by him

as "Admissions Director, CEO & Chief Systems Architect of GSI" and the Addendum was

signed by BARBARA FAWCETT, "Executive VP of Operations on behalf of Galileo Systems

International." We therefore FIND that this Panel and this Arbitration do not have jurisdiction to

arbitrate the claims herein against PETER LETTERESE, individually.

      2.    <u>Jurisdiction of the S.A.V.E. International Agreement</u>. On February 11,

2004 CLAIMANT and RESPONDENT entered into a letter agreement ("Letter Agreement")

regarding the "S.A.V.E. International" self defense training program. Whereas the Contract contains a very specific and detailed arbitration clause, the Letter Agreement does not specifically provide for arbitration to resolve disputes. There are provisions which provide for Governing Law, Enforcement Costs, Specific Performance and a statement that "this Agreement contains the entire understanding ...", but not one mention of recourse to arbitration of disputes. We therefore FIND that this Panel and this Arbitration do not have jurisdiction to arbitrate the claims herein relating to the Letter Agreement.

3.    a)    On December 11, 2003 CLAIMANT entered into the Contract with RESPONDENT PLA and GSI wherein RESPONDENT agreed to perform management consulting services to CLAIMANT and his dental practice. The Contract provided that CLAIMANT would have a Money-Back Guarantee and "receive a full refund in cash" if he "does not feel he has gained sufficient benefit from the program at the end of two years during which he has complied with the terms of this Contract ..." Testimony established that CLAIMANT received little, if any, benefits from the consulting services. In fact, his practice development and income decreased from following RESPONDENT's "hard sell" program.

b)    CLAIMANT paid RESPONDENT a total of $114,950 pursuant to the Contract, duly requested a full refund of said amount but RESPONDENT failed to comply.

4.    a)    On July 16, 2004 CLAIMANT entered into the Addendum Services Contract for the GALILEO SIMULATOR TRAINING for Certification Program. Testimony established that RESPONDENT breached its obligations under this Addendum.

b)    CLAIMANT paid $65,000 to RESPONDENT pursuant to the Addendum and received no benefit therefrom.

5.    RESPONDENT employed a pattern of unfair and deceptive conduct with intent to obtain money from CLAIMANT. RESPONDENT made material omissions including

{M2585999;1}                                    3

the failure to disclose that CLAIMANT would have to make additional financial commitments to enjoy the full benefits of the GALILEO Program, after representing that the Program was an all-inclusive 24 hours a day seven days a week program.

C.   **CONCLUSIONS OF LAW.**

1.   Based on the FINDINGS of paragraph B.1. above all claims herein against PETER LETTERESE, individually, are hereby dismissed from this proceeding.

2.   Based on the FINDINGS of paragraph B.2. above, all claims herein relating to the S.A.V.E. International Agreement (the "Letter Agreement") of February 11, 2004 are hereby dismissed from this proceeding.

3.   CLAIMANT and RESPONDENT entered into a valid Contract and Addendum. RESPONDENT has materially breached the Contract and Addendum by failing to perform under the terms of the Contract and Addendum, as set forth in paragraphs B.3. and 4. above resulting in damages to CLAIMANT for amounts paid by CLAIMANT to RESPONDENT pursuant to the Contract and the Addendum in the amounts of $114,950 and $65,000 respectively, for a total of $179,950.

4.   RESPONDENT engaged in Deceptive and Unfair Trade Practices under the provisions of Fla. Stat. § 501.201 et seq. as set forth in paragraph B.5. above and is entitled to recover his damages in the amounts of $114,950 and $65,000 for sums paid to RESPONDENT pursuant to the terms of the Contract and Addendum. As the prevailing party CLAIMANT is entitled to recover reasonable attorneys' fees. (Fla. Stat. § 501.205)

**ACCORDINGLY, WE AWARD**, as follows:

(a)    Within thirty (30) days from the date of transmittal of this Award to the Parties, RESPONDENT PETER LETTERESE & ASSOCIATES, INC., a Florida corporation, shall pay to CLAIMANT DR. MARC A. SCHWARTZ the sum of ONE HUNDRED SEVENTY-NINE THOUSAND NINE HUNDRED FIFTY ($179,950) DOLLARS together with interest thereon at the rate of eleven (11%) percent per annum. ((Fla. Stat. § 55.03)

2.    As the prevailing party, CLAIMANT shall recover reasonable attorneys' fees from RESPONDENT. The amount of said fees are to be determined by a Court of competent jurisdiction.

3.    The compensation and expenses of the Arbitrators, totaling $26,161.50 shall be borne entirely by RESPONDENT.

4.    The administrative fees and expenses of the American Arbitration Association totaling $4,250.00 shall be borne entirely by RESPONDENT.

5.    Therefore, RESPONDENT shall reimburse Dr. Marc A. Schwartz and Schwartz Dental Practice the sum of $17,330.75, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Dr. Marc A. Schwartz and Schwartz Dental Practice.

6.    This award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied.

We hereby certify that this Final Award was made in Miami and Palm Beach, Florida.

SEPT. 20, 2007
_____
Date

_____
Date

09/24/07
_____
Date

_____
Burton A. Landy, Arbitrator, Chairman

_____
Jerald S. Beer, Arbitrator

_____
George F. Knox, Arbitrator

{M2585999;1}                                    6

# American Arbitration Association
## Commercial Arbitration Tribunal

In the Matter of the Arbitration between

**Re:    32 181 00057 06**

Dr. Scott Brody (Claimant)
and
Peter Letterese, Individually, and
Peter Letterese & Associates, Inc.
(Respondents)

## FINAL AWARD

I , THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the

arbitration agreement entered into between the above-named parties, and having been duly sworn,

and having duly heard the proofs and allegations of the Parties, do hereby, AWARD, as follows:

### I. PROCEDURAL HISTORY

1.     On January 13, 2006, the Claimant, DR. SCOTT BRODY ("BRODY"),

represented by Antoinette Theodossakos, Esquire and Simeon D. Brier, Esquire of Edwards

Angell Palmer & Dodge, LLP, filed a Demand for Arbitration and Statement of Claim with the

American Arbitration Association ("AAA") against the Respondents, PETER LETTERESE

("LETTERESE") and PETER LETTERESE & ASSOCIATES, INC. ("PLA"), d/b/a Galileo

Systems International and d/b/a S.A.V.E! (collectively "LETTERESE RESPONDENTS"),

represented by James K. Pedley, Esquire.  BRODY has asserted claims for declaratory relief,

breach of contract, fraud in the inducement, and violation of Florida's Deceptive and Unfair Trade Practices Act, FLA. STAT. §§ 501.201-.213.

2.      BRODY later initiated an action in the Circuit Court for the Seventeenth Judicial Circuit in and for Broward County, Florida to enforce the arbitration provision.

3.      The undersigned Arbitrator was appointed by AAA on December 4, 2006.

4.      A preliminary hearing was scheduled for February 26, 2007.     Because of a problem with the call-in center pass code, the preliminary hearing had to be rescheduled.

5.      On March 7, 2007, Mr. Pedley entered an appearance on behalf of LETTERESE RESPONDENTS, filed a response in which LETTERESE RESPONDENTS denied the allegations of the Statement of Claim, and moved to stay arbitration on the grounds that LETTERESE, individually, is not subject to arbitration before the AAA.   LETTERESE RESPONDENTS requested that no matters be scheduled without coordination with their counsel and that copies of the docket sheet and pleadings be provided to them.

6.      On March 9, 2007, the Arbitrator ordered that copies of the docket page and all filings be furnished to LETTERESE RESPONDENTS; gave LETTERESE RESPONDENTS ten (10) days from the date of the Order in which to provide a written submission in support of their motion to stay arbitration; and allowed BRODY seven (7) days thereafter in which to file his response. Those memoranda were served on March 14, 2007 and March 26, 2007, respectively.

7.      On March 27, 2007, the Arbitrator issued his order denying, without prejudice, the Motion to Stay Arbitration. The Arbitrator noted that, in their submissions, both parties relied solely upon the circuit court rulings and that "[n]either side has yet briefed the underlying question as to which parties are signatories to an arbitration agreement (and, if non-signatories are being

included in the arbitration demand, the legal basis for inclusion), or the scope of the arbitration clause as applied to the claims being asserted."

8.     On April 4, 2007, the First Preliminary Hearing was conducted. While preserving their objection to the AAA arbitration, LETTERESE RESPONDENTS consented to a series of filing deadlines and to a June 11, 2007 final hearing. The renewed motion to stay arbitration was denied: "The Arbitrator, while respectful of LETTERESE [RESPONDENTS'] opposition, is nevertheless bound to proceed with arbitration based upon Circuit Judge Richard Eade's September 28, 2006 Order Granting Plaintiff's Default Final Judgment entered against LETTERESE [RESPONDENTS]. Of course, should Judge Eade modify or vacate his Order, as LETTERESE [RESPONDENTS] ha[ve] urged him to do, the Arbitrator would revisit LETTERESE [RESPONDENTS'] procedural objections at the time." *See* Report on Preliminary Hearing and Scheduling Order, dated April 5, 2007, at 2.

9.     On May 2, 2007, the Second Preliminary Hearing was held, in part, to consider the impact of anticipated circuit court rulings on the jurisdiction of AAA.  As those circuit rulings were adverse to LETTERESE RESPONDENTS, the Arbitrator let stand his denial to stay the arbitration, notwithstanding the pendency of LETTERESE RESPONDENTS' renewed motions before the circuit court. In denying the motion, the Arbitrator stated:

> The Circuit Court Judge has ordered the parties to proceed with arbitration before the American Arbitration Association; he has denied LETTERESE [RESPONDENTS'] motion to stay arbitration; and he has recently reaffirmed his order compelling arbitration. The Arbitrator will respect these rulings, and unless vacated by the Circuit Court Judge, or overturned on appeal by the Fourth District Court of Appeal, will consider this issue closed.

*See* Report on Second Preliminary Hearing and Scheduling Order, dated May 9, 2007, at 4.

10.     On May 3, 2007, LETTERESE RESPONDENTS filed an "Objection to AAA to Award Attorney's Fees in this Proceeding," which (after providing BRODY with time to file an opposing memorandum of law), the Arbitrator sustained on May 30, 2007.

11.     On May 18, 2007, LETTERESE RESPONDENTS filed an "Objection To This Arbitration" and announced their intention to withdraw from the arbitration. In overruling their objection, the Arbitrator nevertheless expressed his hope "that Respondents w[ould] reconsider their position and participate fully, along with their able counsel, in this proceeding." He also was obliged to warn them, however, that "their absence . . . will not delay the hearing." *See* Order on Respondents' Objection to Arbitration and Claimant's Motion to Strike at 4.

12.     At the June 11, 2007 hearing, Mr. Pedley renewed LETTERESE RESPONDENTS' objection for the record and then merely observed the proceeding. Due to the absence of any argument, cross-examination, or the presentation of contrary evidence by LETTERESE RESPONDENTS, the hearing (originally scheduled for four days) was concluded in a single day.

## II. OBJECTIONS TO ARBITRATION

13.     With regard to the objection to arbitration, LETTERESE RESPONDENTS have set forth four (4) grounds:

        a.     AAA does not have jurisdiction over this arbitration;

        b.     The selection of the arbitrators were never agreed to by LETTERESE RESPONDENTS;

        c.     LETTERESE RESPONDENTS never consented to use AAA arbitrators;

    d.    LETTERESE RESPONDENTS do not believe they can obtain a fair hearing before AAA on the grounds that AAA does not respect nor enforce the parties' agreement.

14.    The contract contains the following arbitration provision:

> If a dispute arises under this contract, either party herein agrees, *as its single source of dispute resolution, to have the dispute arbitrated under the rules of the American Arbitration Association*, except as otherwise provided in this paragraph. . . .

(Emphasis added.)

15.    In this instance, the parties expressly specified in their contract that the AAA Rules would apply to any dispute between them. In doing so, they vested AAA with jurisdiction:

> When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, *they thereby authorize the AAA to administer the arbitration*. . . .

AAA Rule R-2 (emphasis added).[1]

16.    In this instance, the parties' arbitration agreement did provide for the selection of a three-arbitrator panel:

> Each of the parties shall designate an arbitrator who shall be actively practicing his business or profession and shall have a minimum of 10 years experience in the business or profession. The two arbitrators thus selected shall select a third arbitrator who shall have the same qualifications. The three arbitrators thus selected shall constitute a panel of arbitrators. A decision in the arbitration shall be by a majority vote of the arbitrators.

---

[1] The arbitration provision states further that, "*[e]xcept as otherwise provided* in this paragraph, Chapter 682 Florida Statutes shall apply to the arbitration" (emphasis added). LETTERESE RESPONDENTS argues that Chapter 682, rather than the AAA Rules, should govern. Reading the provision together as a whole, however, its is clear that guidance from Chapter 682 is contemplated only where the contract clause or the AAA Rules are silent. *See Jones v. Florida Ins. Guar. Ass'n, Inc.*, 908 So.2d 435, 456 (Fla. 2005) ("courts are required to read provisions of a contract harmoniously to give effect to all portions thereof").

*See also* AAA Rule R-12 which similarly accommodates direct appointment of the arbitrators in this manner.

17.    Two events here, however, occurred. First, BRODY requested AAA to reduce the number of arbitrators from three to one, in order to save costs. AAA, as is its customary practice, contacted LETTERESE RESPONDENTS, and, upon receiving no objection, granted the request. Second, LETTERESE RESPONDENTS declined to assist in the selection of the arbitrator. A party cannot delay indefinitely an AAA arbitration simply by refusing to participate.  Consistent with Rule R-12(d), AAA made the appointment from its National Roster of Neutrals.[2]

18.    The AAA has a long history and great experience in administering arbitrations, and the Arbitrator made a special point of assuring LETTERESE RESPONDENTS personally that they would receive a fair hearing. *See* Order on Respondent's Objection to Arbitration at 4. ("To date, there has been no consideration of the merits of the claims themselves, only procedural issues. No opinions have been formed, nor could they have, as to the substance of the dispute between the parties.").

## III. FINDINGS OF FACT

19.    BRODY is a licensed dentist located in Colorado and engaged in private practice. He was interested in finding new ways to grow his patient base and increase the practice's overall revenue.

20.    LETTERESE RESPONDENTS operate and promote the Galileo and S.A.V.E!

---

[2] The contract calls for an arbitrator who "was actively practicing his business or profession and [with] . . . a minimum of 10 years experience in the business or profession." The Arbitrator appointed by AAA has been actively practicing in his profession for the past twenty-six (26) years. While it is true that LETTERESE RESPONDENTS did not select the Arbitrator, the same may be equally said of BRODY.

programs as consulting and training services designed especially for dental practices.

21.    In February of 2004, LETTERESE RESPONDENTS and BRODY engaged in

discussions concerning the Galileo Program. Among the representations which LETTERESE

RESPONDENTS made were:

       a.    The Galileo Program was successful with many dentists
          nationwide.

       b.    The Galileo consulting services would increase BRODY's
          net profits by expanding his practice 30% to 100% and that,
          through the Galileo Program, BRODY's patients would pay
          on time and in full for his dental services.

       c.    LETTERESE promised his immediate availability to
          personally provide daily advice, management, consulting,
          and training to BRODY and his staff.

       d.    The Galileo Program included a Money-Back Guarantee,
          under which PLA would return BRODY's money if he were
          not satisfied.

22.    On February 26, 2004, BRODY and PLA entered into the Galileo Advanced

Management Mentoring 2004 5-Year Standard Contract (the "Galileo Contract").

23.    Pursuant to the Galileo Contract, BRODY made the following payments to

LETTERESE RESPONDENTS: (i) $35,000.00 on March 3, 2004; (ii) $18,000.00 on March 4,

2004; (iii) $7,000.00 also on March 4, 2004; (iv) $30,000.00 on March 10, 2004; and (vi)

$60,000.00 on March 16, 2004.

24.    The Money-Back Guarantee provision in the Galileo Contract provides, in pertinent

part, as follows:

       Should Dr. BRODY be dissatisfied with the Galileo® Advanced
       Management Mentoring Program™, HE MAY RECEIVE A
       FULL REFUND IN CASH of the Galileo® Advanced Management
       Mentoring Program™ fee amount paid as follows: IF HE DOES
       NOT FEEL HE HAS GAINED SUFFICIENT BENEFIT FROM

THE PROGRAM **AT THE END OF TWO YEARS** DURING
WHICH HE HAS COMPLIED WITH THE TERMS OF THIS
CONTRACT AS STATED HEREIN, HE MAY REQUEST AND
WILL RECEIVE A FULL REFUND.

(Capitalization and emphasis in original.)

25.     The Galileo Program did not result in increased income to the Plaintiff.  The

Program encouraged BRODY to "hard sell" his patients to pay for dental services in advance,

which alienated some of his clients and staff, and resulted in a loss of business.

26.     Shortly after BRODY entered into the Galileo Contract, LETTERESE

RESPONDENTS solicited BRODY to purchase another of its programs known as S.A.V.E!

(Survive a Violent Encounter!), which taught personal protection and martial arts.[3]

27.     LETTERESE RESPONDENTS told BRODY that he could generate new patients

by conducting classes which would require participants to come to his office to enroll.  BRODY

was also assured that the S.A.V.E! Program would generate its own income through paid

participation in classes sold to companies in the area.

28.     LETTERESE RESPONDENTS further represented to BRODY that S.A.V.E!

training was an essential component to the Galileo Program, without which BRODY's practice

would never achieve the full potential of what the Galileo Program could offer.

29.     On April 5, 2004, BRODY entered into a Letter Agreement with LETTERESE

RESPONDENTS for S.A.V.E!'s full training program, pursuant to which BRODY paid an

additional $145,500.00 to LETTERESE RESPONDENTS (the "S.A.V.E! Contract").

30.     Pursuant to the S.A.V.E! Contract, BRODY made the following payments to

---

[3]The S.A.V.E! Program was said to be helpful to BRODY's dental practice in two respects.  First, it would
build self-esteem and assertiveness in his interaction with patients (an integral part of the "hard-sell" approach which
characterized the Galileo Program).  Secondly, the training would be offered to the public at large with the hope of
garnering community goodwill and attracting new patients.

LETTERESE RESPONDENTS: (i) $30,000.00 on April 24, 2004; (ii) $16,500.00 on May 10,

2004; (iii) $40,000.00 on May 11, 2004; (iv) $2,000.00 on May 13, 2004; (v) $7,000.00 on

May 20, 2004; and (vi) $50,000.00 also on May 20, 2004.

31.     Under the S.A.V.E! Contract, LETTERESE RESPONDENTS were to provide

BRODY and his family with the "Official Curriculum for PLA/S.A.V.E!'s S.A.V.E! ONE

Trainer's Training."

32.     LETTERESE RESPONDENTS refused to perform their obligations under the

S.A.V.E! Contract by failing to provide the training courses as promised under the terms of the

S.A.V.E! Contract (in fact, PLA had no instructor to teach levels 4-20), and BRODY was never

allowed to complete the program.

33.     LETTERESE RESPONDENTS later approached BRODY about participating in

the Galileo Simulator Site Program, under which BRODY would host other potential Galileo

clients in an effort to show them how the Galileo Program worked in practice.[4]  As part of the

inducement, LETTERESE RESPONDENTS promised to provide BRODY with greater training

in the Galileo Program (which apparently had been "held back" previously).

34.     BRODY agreed to enter into the Galileo Simulator Site Program with the

understanding that LETTERESE RESPONDENTS would not solicit him further for monies; that

LETTERESE RESPONDENTS would honor the money-back guarantee provision; and that

LETTERESE RESPONDENTS would apply $50,000.00 that BRODY previously paid under the

S.A.V.E! Program towards payment of the Galileo Simulator Site Program.

---

[4] The Galileo Simulator Site Program was to help BRODY's dental practice in two respects. First, as a teacher, BRODY would develop a fuller understanding and acquire greater skills in implementing the Galileo Program. Second, as an instructor, BRODY would receive additional revenue from his training sessions.

35.    On December 7, 2004, BRODY entered into a Letter Agreement (the "Letter Agreement") and an Addendum Services Contract (the "Addendum") with LETTERESE RESPONDENTS, operating as Galileo, in furtherance of the Galileo Contract and in participation with the Galileo Simulator Site Program.    The Addendum provided that LETTERESE RESPONDENTS, operating as Galileo, were to train BRODY and his dental practice to become certified as a Designated Galileo Simulator Site.

36.    Pursuant to the Addendum, BRODY paid $15,000.00 to LETTERESE RESPONDENTS (the balance after $50,000.00 was credited from payments made by BRODY under the S.A.V.E! Program).  Paragraph 2(a) of the Addendum also provided that the "Special Terms Money-Back Guarantee" (to the Galileo Contract) fully applied to the Addendum as well.

37.    Several months after BRODY entered into the Galileo Simulator Site Program, LETTERESE RESPONDENTS contacted him, and requested that he pay an additional $50,000.00 towards the S.A.V.E! Program to compensate for the amount transferred to the Galileo Simulator Site Program, which BRODY declined to do.

38.    On Friday, March 11, 2005, LETTERESE called BRODY at his office and informed him that he was not a "Galileo doctor" and that PLA wished to terminate BRODY as a client. The following morning, on March 12, 2005, LETTERESE and BRODY spoke again by telephone. During that conversation, LETTERESE notified BRODY that he was "untrainable," only interested in making money, and was incapable of participating in the programs.

39.    LETTERESE RESPONDENTS subsequently informed BRODY that he was being placed on a leave of absence under the Galileo Program.

40.    BRODY was dissatisfied with the Galileo Contract, the S.A.V.E! Contract, the Letter Agreement, and the Addendum. BRODY's practice sustained diminished net profits, and

his patient base decreased.

    41.    BRODY timely demanded the return of his monies.

## IV. CONCLUSIONS OF LAW
### A. Breach of Contract

    42.    Under Florida law, the elements of a breach of contract claim are (1) a valid contract, (2) a material breach, and (3) damages. *See e.g. Sulkin v. All Florida Pain Mgmt*, 932 So. 2d 485 (Fla. 4th DCA 2006). The Galileo Contract, the S.A.V.E! Contract, the Letter Agreement and the Addendum are all valid contracts.

    43.    A material term of each of these contracts (excluding the S.A.V.E! Contract) is the written money-back guarantee in the event that BRODY were not satisfied with the services provided.

    44.    The test is a subjective one: "If [BRODY] does not feel he has gained sufficient benefit from the program at the end of two years during which he has complied with the terms of this contract as stated herein, he may request and will receive a full refund." In other words, so long as BRODY was acting in good faith, the determination as to whether or not he was satisfied with the contract was his alone to make.

    45.    The Arbitrator finds that not only was BRODY sincere in his dissatisfaction, but also he would have met an "objective" test in light of his actual experience with the Galileo program. PLA waived its two-year requirement for seeking a refund when it wrongfully terminated the Galileo Contract on March 12, 2005.

    46.    With respect to the S.A.V.E! program, the Arbitrator finds that PLA materially breached this agreement by failing to provide the promised services and by wrongfully terminating

the contract.

47.     As such, BRODY is entitled to damages against PLA in the amount of $310,500.00, plus interest and costs.

48.     BRODY is the prevailing party against PLA in the breach of contract count.

## B. Declaratory Judgment

49.     To be entitled to a declaratory judgment, a claimant must demonstrate "[1] ... a bona fide, actual, present practical need for the declaration; [2] ... the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; [3] ... some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; [4] ... there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; [5] ... the antagonistic and adverse interests are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity." *City Of Hollywood v. Petrosino*, 864 So.2d 1175, 1177 (Fla. 4th DCA 2004), citing *City of Hollywood v. Fla. Power & Light Co.*, 624 So.2d 285, 286-87 (Fla. 4th DCA 1993).

50.     BRODY argues that, because the Galileo Contract, the Letter Agreement, and the Addendum placed no express performance obligations on PLA, there was a lack a mutuality of obligation. In fact, there was an express standard which LETTERESE RESPONDENTS were required to meet under these contracts, and that was to satisfy their clients.

51.     The absence of complete mutuality of remedies, moreover, does not render these contracts unenforceable:

If mutuality of remedies is understood to mean that both parties to
a contract must have the same remedy to enforce it, then the concept
has "largely disappeared from the law of American jurisdictions."
*LaBonte Precision, Inc. v. LPI Indus., Corp.*, 507 So.2d 1202,
1203 (Fla. 4th DCA 1987); *Rohlfing v. Tomorrow Realty & Auction
Co.*, 528 So.2d 463, 466-67 (Fla. 5th DCA 1988). We have held
that such an absence of mutuality of remedies will not destroy an
agreement's validity.  *LaBonte Precision*, 507 So.2d at 1203;
*Wright & Seaton, Inc. v. Prescott*, 420 So.2d 623, 625, n. 2 (Fla.
4th DCA 1982).   "The legal principle requiring mutuality in
contracts does not require that in every case each party have the
same remedy." *Wright & Seaton*, 420 So.2d at 625 n. 2 (quoting
*Bossert v. Palm Beach County Comprehensive Cmty. Mental Health
Ctr., Inc.*, 404 So.2d 1138, 1139 (Fla. 4th DCA 1981)).

*Blue Paper, Inc. v. Provost*, 914 So.2d 1048, 1052 (Fla. 4th DCA 2005).

52.    In this case, the Arbitrator finds that these contracts were enforceable.

## C.  Breach of Oral Contract

53.    There was uncontroverted testimony that LETTERESE RESPONDENTS orally

agreed to extend the Galileo Contract's money-back guarantee to the S.A.V.E! Contract as an

inducement for BRODY to enter into the Galileo Simulator Contract (which expressly contains the

same warranty).

54.    Without any opposing evidence, BRODY's evidence must be credited.  The

Arbitrator cannot exclude such testimony as parol evidence, moreover, as "the rule in Florida is

well established that a written contract may be 'modified by an oral agreement if the latter has

been accepted and acted upon by the parties in such manner as would work a fraud on either party

to refuse to enforce it . . . .'" *Pathway Financial v. Miami Intern. Realty Co.*, 588 So.2d 1000,

1005 (Fla. 3d DCA 1991), quoting *King Partitions & Drywall, Inc. v. Donner Enters., Inc.*, 464

So.2d 715, 716 (Fla. 4th DCA 1985)."  A subsequent oral modification between the parties and

action in reliance thereon, such as exists here, creates a new contractual obligation which does not violate the rule against parol evidence. *Id.*; citing *King Partitions & Drywall, Inc.*, 464 So.2d at 716.

55. As PLA failed to provide the promised training under the S.A.V.E! Contract, BRODY is entitled to a refund of $95,500 from PLA, representing the $145,500 purchase price, less the $50,000 credit which was applied to the Galileo Simulator Contract (which is merely an alternative theory for liability, and not an additional award).

## D. Fraud in the Inducement

56. To prevail on a claim for fraud, four elements must be shown: "(1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation." *Wadlington v. Continental Medical Services, Inc.*, 907 So.2d 631, 632 (Fla. 4th DCA 2005), citing *Cohen v. Kravit Estate Buyers, Inc.*, 843 So.2d 989, 991 (Fla. 4th DCA 2003) (quoting *Lopez-Infante v. Union Cent. Life Ins. Co.*, 809 So.2d 13, 15 (Fla. 3d DCA 2002).

57. BRODY claims LETTERESE RESPONDENTS have made the following material misrepresentations:

    a. The Galileo Program was popular with and used successfully by countless dentists nationwide, and that the program would double his sales and his number of patients;

    b. The Galileo Program would enable him to increase his net profits.

    c. The Galileo Program would expand BRODY's practice and increase his patient flow.

        d.     The Galileo Program would result in his patients paying on
                 time and in full.

58.     With respect to the first representation, BRODY has offered no evidence as to the

number of dentists nationwide who are enrolled in the Galileo Program. In his trial memorandum,

BRODY includes a footnote setting forth seventeen (17) case citations in which PLA is a party.

The Arbitrator knows nothing more about these cases, e.g., whether the individual disputes

involve the Galileo Program; whether these claims have merit (PLA, after all, is the plaintiff in

all of them); or whether these parties represent a significant percentage of the total enrollees in the

Galileo Program.

59.     As to the balance of the representations, the Arbitrator finds that they are essentially

promises as to future results which do not rise to the level of actionable fraud under the facts and

circumstances of this case. "An action for fraud generally may not be predicated on statements

of opinion or promises of future action, but rather must be based on a statement concerning a past

or existing fact." *Mejia v. Jurich*, 781 So.2d 1175, 1177 (Fla. 3d DCA 2001), citing *Maunsell

v. American Gen. Life & Accident Ins. Co.*, 707 So.2d 916 (Fla. 3d DCA 1998); *Baker v. United

Servs. Auto. Ass'n*, 661 So.2d 128 (Fla. 1st DCA 1995), *rev. denied*, 669 So.2d 252 (Fla. 1996);

*Thor Bear, Inc. v. Crocker Mizner Park, Inc.*, 648 So.2d 168 (Fla. 4th DCA 1994).

60.     The Arbitrator finds such statements more to be in the nature of "puffing," which

has been described as "praising, extolling, or commending in inflated or extravagant terms and

is usually from interested motives." *Inter-Tel, Inc. v. West Coast Aircraft Engineering, Inc.*, Slip

Copy, 2006 WL 3335050 *8 (M.D. Fla. 2006), quoting  *Southwestern Bell Media, Inc. v.

Spencer*, 1990 Okla. Civ.App. LEXIS 60 (Okla.Ct.App.1990) (citing 12 THE OXFORD ENGLISH

DICTIONARY, 796 (2d ed 1989)). Such exaggerated praise "is considered to be offered and

understood as an expression of the seller's opinion only, which is to be discounted as such by the buyer, and on which no reasonable man would rely." *Inter-Tel, Inc.*, *supra*; *Southwestern Bell Media, Inc.* , *supra*, (quoting W. Keeton, and W. Prosser, Prosser and Keeton on the LAW OF TORTS, § 109 at 757 (5th ed. 1984)).

61.     The Arbitrator draws the same conclusions with respect to the S.A.V.E! Contract, under which BRODY was to receive personal protection and martial arts training pursuant to a twenty (20) level curriculum. Specifically, LETTERESE RESPONDENTS represented that the S.A.V.E! Program would:

> a.     teach him personal protection and martial arts techniques for the protection of his person and his practice;
>
> b.     generate new patient flow to his practice;
>
> c.     generate an income stream as a result of paid participation in group classes.

62.     BRODY argues that the promise to teach the program was fraudulent because it was never done, but "[a] false statement amounting to a promise to do something in the future is not actionable fraud." *Eastern Cement v. Halliburton Co.*, 600 So.2d 469, 473 (Fla. 4th DCA 1992), quoting *Sleight v. Sun and Surf Realty, Inc.*, 410 So.2d 998, 999 (Fla.3d DCA 1982). Rather, it must be shown that "the promisor had a specific intent not to perform at the time the promise was made." *Century Properties, Inc. v. Machtinger*, 448 So.2d 570, 572 (Fla.2d DCA 1984). No such evidence was presented at the hearing.

## E. Unjust Enrichment

63.     To state a claim for unjust enrichment, BRODY must show that (1) he has conferred a benefit on LETTERESE RESPONDENTS, who had knowledge of that benefit, (2) that

LETTERESE RESPONDENTS voluntarily accepted and retained the benefit conferred, and (3)

that the circumstances are such that it would be inequitable for LETTERESE RESPONDENTS

to retain the benefit without paying the value thereof to BRODY. *See Hillman Constr. Corp. v.*

*Wainer*, 636 So. 2d 576 (Fla. 4th DCA 1994).

64.     In this case, however, the existence of the express contracts defeats the unjust

enrichment claim:

> Defendants correctly state that a plaintiff cannot pursue an equitable
> theory, such as unjust enrichment or quantum meruit, to prove
> entitlement to relief if an express contract exists. *See, e.g., Kovtan
> v. Frederiksen*, 449 So.2d 1, 1 (Fla. 2d DCA 1984) ("It is well
> settled that the law will not imply a contract where an express
> contract exists concerning the same subject matter."); *In re Estate
> of Lonstein*, 433 So.2d 672, 674 (Fla. 4th DCA 1983) (same). A
> contract implied in law, or "quasi contract," operates when there
> is no contract "to provide a remedy where one party was unjustly
> enriched, where that party received a benefit under circumstances
> that made it unjust to retain it without giving compensation."
> *Commerce P'ship. 8098 Ltd. P'ship v. Equity Contracting Co.,
> Inc.*, 695 So.2d 383, 386 (Fla. 4th DCA 1997).

*Ocean Communications, Inc. v. Bubeck* (DCA No. 4D06-587) May 23, 2007, *3.

65.     The Arbitrator recognizes that the unjust enrichment claim is merely an alternative

theory for the same recovery, which has now been rendered moot by the finding that express

contracts concerning this transaction exist and will be enforced.

### F.  Florida Deceptive and Unfair Trade Practices Act

66.     Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. §§

501.201-.213, affords civil private causes of action for both declaratory and injunctive relief and

for damages. "A consumer claim for damages under FDUTPA has three elements: (1) a deceptive

act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So.2d

860, 869 (Fla. 2d DCA 2006), citing *Chicken Unlimited, Inc. v. Bockover*, 374 So.2d 96, 97 (Fla.

2d DCA 1979); *Gen. Motors Acceptance Corp. v. Laesser*, 718 So.2d 276, 277 (Fla. 4th DCA

1998); *Macias v. HBC of Fla., Inc.*, 694 So.2d 88, 90 (Fla. 3d DCA 1997).

67.     As a threshold matter, the Arbitrator finds he has jurisdiction to consider the claim,

as "Florida case law is clear that FDUTPA claims can properly be submitted to arbitration."

*Murphy v. Courtesy Ford, L.L.C.*, 944 So.2d 1131, 1133 (Fla. 3d DCA 2006), citing *Orkin*

*Exterminating Co. v. Petsch*, 872 So.2d 259, 261 (Fla. 2d DCA 2004); *Aztec Med. Servs., Inc.*

*v. Burger*, 792 So.2d 617, 620 (Fla. 4th DCA 2001).

68.     The Arbitrator also finds that FDUTPA applies to this transaction, even though

BRODY contracted with LETTERESE RESPONDENTS in his business capacity:

> We note that the definition of consumer includes several business
> entities, which would seem to extend its meaning beyond the
> traditional understanding of a consumer transaction as embracing
> the dealings of individuals and their families in matters affecting
> their personal or household use. If corporations, firms, joint
> ventures and business trusts are consumers for purposes of
> FDUTPA, it would also seem at first blush that they are equally
> entitled to its protections in business dealings, at least when they are
> themselves acting as consumers.

*Beacon Property Management, Inc. v. PNR, Inc.*, 890 So.2d 274, 277 (Fla. 4th DCA 2004).

69.     BRODY asserts that LETTERESE RESPONDENTS have taken part in collective

deception, unconscionable acts, breaches of contracts, flagrant misrepresentations, threats,

intimidation, unfair treatment of BRODY, and coercion during the sale, promotion, solicitation,

and distribution of their services.

70.     FDUTPA provides that "unfair methods of competition, unconscionable acts or

practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are

hereby declared unlawful." § 501.204(1), Fla. Stat. (2004).     The key issue is whether

LETTERESE RESPONDENTS' practices were "likely to deceive a consumer acting reasonably in the same circumstances." *State, Office of Attorney General, Dept. of Legal Affairs v. Commerce Commercial Leasing, LLC*, 946 So.2d 1253, 1258 (Fla. 1ˢᵗ DCA 2007), quoting *State, Office of Attorney General, Department of Legal Affairs v. Wyndham International, Inc.*, 869 So.2d 592, 598 (Fla. 1ˢᵗ DCA 2004).

71.     A deceptive or unfair trade practice has been described as "a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." *Id.*; *see also Commerce Commercial Leasing, LLC*, 946 So.2d at 1258.

72.     In this case, as with the fraud counts, the Arbitrator does not find sufficient evidence of a deceptive or unfair practice directed against BRODY with regard to the exaggerated promises of increased business. LETTERESE RESPONDENTS engaged in puffing and "hard sell" marketing – the very same approach, it bears noting, upon which the Galileo Program itself depends.

73.     Quite candidly, BRODY shares responsibility for the misfortune which befell him. He is an educated and accomplished individual; yet, by his own description, he exercised poor business judgment in his dealings with LETTERESE RESPONDENTS. With each new program, BRODY professed dissatisfaction with the results; yet, he successively elected to increase his involvement and financial investment with LETTERESE RESPONDENTS. BRODY's counsel argues that it was the harassment, intimidation, and coercion which forced his client to take the actions he did. Respectfully, the Arbitrator found no evidence that BRODY was anything other than an intelligent, articulate, and self-assured individual, who freely made his own choices.

74.     There was insufficient evidence of any intimidation or coercion of BRODY.

BRODY admitted during his testimony, for example, that he always believed that he had recourse

to his 100% money-back guarantee.   His decision to engage further with LETTERESE

RESPONDENTS was motivated more from his desire to reap the unrealized benefit of the Galileo

Program, rather than out of any genuine fear of forfeiting his investment.

75.     BRODY asserts that LETTERESE RESPONDENTS misrepresented facts related

to the Galileo Program.  False statements as to the experiences of other participants in the Galileo

Program can form the basis of a FDUTPA claim, but the reference to seventeen (17) lawsuits, in

and of itself, does not meet this evidentiary burden.  Tellingly, PLA is the plaintiff in each of

those cases, and the Galileo contract introduced in evidence contained a mandatory arbitration

clause.  As far as the Arbitrator can determine, these court actions might have been nothing more

than collection efforts by PLA in connection with another part of its business.  Without more, the

Arbitrator cannot conclude that those defendants were dissatisfied with the results they achieved,

or, for that matter, that they even participated in the Galileo Program.

76.     The FDUTPA claim is a close decision, one made all the more difficult by the

absence of legal argument from LETTERESE RESPONDENTS or the presentation of any

exculpatory evidence.  There are at least two (2) instances where BRODY has made his prima

facie case for FDUTPA violations:

> a.    BRODY was promised direct, intense, and all-inclusive
> training in the Galileo Program for his $150,000 purchase.
> LETTERESE RESPONDENTS later revealed, however,
> that BRODY would also have to purchase the $65,000
> Galileo Simulator Program in order to obtain such a benefit.
> "Bait and switch" tactics are violative of FDUTPA.
> *Cummings v. Warren Henry Motors, Inc.*, 648 So.2d 1230,
> 1233 (Fla. 4th DCA 1995).

     b.     The S.A.V.E! Contract called for a twenty-level intensive training program in personal safety and protection for the $145,000. In fact, BRODY's testimony (and that of Dr. Marc Schwartz) was that LETTERESE RESPONDENTS had no trainer who could offer such a service beyond Level 3 (and no apparent plans to retain one). The Florida Supreme Court has noted that, under FDUTPA, "deception occurs if there is a representation, *omission*, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla.2003) (emphasis added)

77.     The testimony of Dr. Marc Schwartz revealed a strikingly similar experience with LETTERESE RESPONDENTS. Once again, his primary complaint was the "hard selling" of the Galileo and S.A.V.E! Programs and the false promises of increased business. If BRODY had established that (i) Dr. Schwartz's claim was *pending* at the time of the sale of the Galileo Program to him, and (ii) LETTERESE RESPONDENTS had falsely stated that they had never received any complaints, it might have given rise to a third instance of a deceptive or unfair trade practice. Such evidence (much like the 17 pending lawsuits), however, was never fully developed.

78.     BRODY also suggests that the Galileo Program itself was a fraud, nothing more than a collection of hard sell and patient intimidation techniques taken from Church of Scientology training which LETTERESE had received. The Arbitrator is unable to reach such a conclusion based upon the evidence presented.

79.     BRODY did establish two violations of FDUTPA and damages of $310,500. Accordingly, BRODY is the prevailing party against LETTERESE RESPONDENTS on the statutory claim.

## V.  CONCLUSION

80.     The first part of BRODY's case is a relatively straightforward claim for breach of contract.  BRODY entered into a series of written contracts with PLA which contained a money-back guarantee.

81.     In this instance, the Arbitrator finds that BRODY not only was subjectively dissatisfied with the services he received, but also had objective good reason to be so (given the negative impact that the Galileo Program had on his practice).

82.     With respect to the S.A.V.E.! program, BRODY has successfully demonstrated that the parties orally modified the contract to include a money-back guarantee.  The Arbitrator need not have even reached that issue, however, given the uncontroverted evidence that LETTERESE RESPONDENTS unilaterally and wrongfully terminated the contract before the promised services were provided.

83.     While BRODY offers several bases for violation of FDUTPA, the Arbitrator has found two such violations.  The first was LETTERESE RESPONDENTS' "bait and switch" practice in connection with the Galileo Program and the later "up-sell" of the Galileo Simulator Program.  The second was the material omission that the S.A.V.E! Program had no instructor on staff who could teach it (and no demonstrated plans to secure one).

## VI. AWARD

84.     The Respondents are liable to the Claimant in the amount of $310,500.

85.     In addition, the administrative filing and case service fees of the AAA, totaling $6,000.00, shall be borne entirely by the Respondents.  The fees and expenses of the Arbitrator,

totaling $11,220.00, shall be borne entirely by the Respondents. Therefore, the Respondents shall reimburse the Claimant the sum of $11,610.00, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by the Claimant.

    86.    This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

Dated:    July 10, 2007

Steven A. Mayans

## AFFIRMATION

    I, Steven A. Mayans, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.

Dated:    July 10, 2007

Steven A. Mayans



IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT, IN
AND FOR BROWARD COUNTY, FLORIDA

CASE NO.:  0605081 (04)

DR. DOUGLAS G. NESS,                    )
                                        )
    Plaintiff,                          )
                                        )
    v.                                  )
                                        )
PETER LETTERESE, individually, PETER    )
LETTERESE & ASSOCIATES, INC., d/b/a     )
GALILEO SYSTEMS INTERNATIONAL and       )
S.A.V.E! INTERNATIONAL,                 )
                                        )
    Defendants.                         )
_____)

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL ARBITRATION

    **THIS CAUSE** came before the Court on Plaintiffs' Motion to Compel Arbitration heard before this Court on November 17, 2006, and after the argument of counsel, the Court being otherwise duly advised in the premises, the Court finds as follows:

1.  Plaintiff Dr. Douglas G. Ness is hereby GRANTED the relief requested in the Motion to Compel Arbitration against Defendant Peter Letterese & Associates, Inc., d/b/a Galileo Systems International and S.A.V.E.! International, directing the parties to proceed with arbitration before the American Arbitration Association on the following counts:

    a.  COUNT I: Breach of Contract – The Money Back Guarantee

    b.  COUNT II: Declaratory Judgment as to the Galileo Contract

    c.  COUNT III: Breach of Oral Contract as to the Galileo Contract

    d.  COUNT IV: Breach of Express Contract as to the Second S.A.V.E.! Contract

    e.  COUNT V: Breach of Oral Contract as to the Third S.A.V.E.! Contract



EXHIBIT

A

    f.   CCUNT VI: Breach of Contract as to the Third S.A.V.E.! Contract

    g.   COUNT VII: Declaratory Judgment as to the Third S.A.V.E.! Contract

    h.   COUNT XII: Unjust Enrichment

2.  Plaintiff is DENIED the relief requested in the Petition to Compel Arbitration against Defendant Peter Letterese & Associates, Inc., d/b/a Galileo Systems International and S.A.V.E.! International, on the following counts:

    a.   COUNT VIII: Fraud in the Inducement as to the Galileo Contract

    b.   COUNT IX: Fraud in the Inducement as to the S.A.V.E.! Contracts

    c.   COUNT X: Negligent Misrepresentation as to the Galileo Contract

    d.   COUNT XI: Negligent Misrepresentation as to the S.A.V.E.! Defendants

    e.   COUNT XIII: Florida's Deceptive and Unfair Trade Practices Act

    f.   COUNT XIV: Civil RICO

3.  Plaintiff is DENIED the relief requested in the Petition to Compel Arbitration against Defendant Peter Letterese, individually, on all counts.

4.  Jurisdiction over the subject matter and the parties hereto is reserved for the purpose of entering such further Orders and Judgments as are necessary and proper.

    DONE AND ORDERED at Fort Lauderdale, Broward County, Florida, this ___5___ day of _____, 200_7_.

HONORABLE ROBERT B. CARNEY
CIRCUIT COURT JUDGE

Copies furnished:

Antoinette Theodossakos, Esquire, Edwards Angell Palmer & Dodge LLP
One North Clematis Street, Suite 400, West Palm Beach, FL 33401

James K. Pedley, Esq., Pedley and Koewing
727 Northeast Third Avenue, Fort Lauderdale, FL   33304

/19/20071:56:55 PM



Murphy, Yolainya

---

**From:** Landin, Denise
**Sent:** Friday, January 19, 2007 1:52 PM
**To:** Woodfield, Gary
**Cc:** Murphy, Yolainya
**Subject:** FW: Ness order

**Attachments:** 20070119133058_001.001.PDF



20070119133058_0
01.001.PDF (66...

```
Denise A. Landin
Assistant to John G. Igoe, P.A.
Tel:  561-820-0231   Fax:  561-655-8719

Edwards Angell Palmer & Dodge LLP
1 North Clematis Street
Suite 400
West Palm Beach, FL  33401
561-833-7700, ext. 6231

www.eapdlaw.com

-----Original Message-----
From: Ruiz, Eva
Sent: Friday, January 19, 2007 1:36 PM
To: Landin, Denise
Subject: FW: Ness order


--------------------------------------------
From: Priess, Susan
Sent: Friday, January 19, 2007 1:35:53 PM
To: Theodossakos, Antoinette
Cc: Senne, Christine; Landin, Denise; Ruiz, Eva
Subject: FW: Ness order
Auto forwarded by a Rule


Here's the order retrieved from the court.  I'll send it to Misty for filing and fax a
copy to Mr. Pedley.

Susan L. Priess, CP, CFLA
Senior Paralegal
Edwards Angell Palmer & Dodge LLP

www.eapdlaw.com

-----Original Message-----
From: BOSGLOBALSCAN@EDWARDSANGELL.COM [mailto:BOSGLOBALSCAN@EDWARDSANGELL.COM]
Sent: Friday, January 19, 2007 1:34 PM
To: Priess, Susan
```

Subject: Ness order

GlobalScan document sent from .